**ROYALTY PETROLEUM COMPANY, Plaintiff,**

v.

**ARKLA, INC., a Delaware corporation, Defendant.**

No. CIV–89–495–P.

United States District Court, W.D. Oklahoma.

March 5, 1990.

Thomas P. Goresen, Roberts, Gray, Goresen & Moriarty, Oklahoma City, Okl., for plaintiff.

Frank M. Hagedorn, James J. Proszek, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Okl., and Ernest L. Edwards, Jr., Amy L. Baird, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., Douglas N. Gould, Oklahoma City, Okl., for defendant.

ORDER STRIKING DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, IMPOSING PRECLUSIONARY SANCTIONS PURSUANT TO RULE 16(f), AND AWARDING EXPENSES

PHILLIPS, District Judge.

## I. BACKGROUND

On January 24, 1990, more than two months after discovery had closed, more than two weeks after the jury was selected, and the afternoon before the trial was to begin, defendant served plaintiff with a Supplemental Response to Plaintiff's Interrogatories. Consequently, Royalty requested sanctions. The Supplemental Response contains information pertaining to alleged conversations and discussions between representatives of the defendant and representatives of the plaintiff which were undeniably central to the issues in this case. The Supplemental Response was not signed by an attorney of record, as required by Federal Rules of Civil Procedure

26(g) [1] nor were the responses sworn to as required by Rule 33(a).[2]

The Supplemental Response concerned conversations that were the subject of a previous interrogatory submitted by plaintiff at the outset of discovery. Plaintiff's Interrogatory # 3, served on or about April 30, 1989, requested the following information:

> State the substance of each discussion, which occurred after the execution of the Settlement Agreement dated February 4, 1987, relating to the installation of the subject taps and meters.

Certain evidence proffered by defendant in connection with the Supplemental Response falls squarely within this interrogatory. As a result, plaintiff on January 25, 1990, filed a motion for default judgment or in the alternative for an order excluding the evidence. The Court denied outright the plaintiff's request for default judgment as unduly harsh and unwarranted. See *Minute Order* (Jan. 25, 1990); *Meade v. Grubbs*, 841 F.2d 1512, 1520 & n. 6 (10th Cir.1988).

The Court subsequently requested plaintiff to identify those portions of the Supplemental Response which were both prejudicial and previously undisclosed. After entertaining argument during a break from trial and after receiving a lengthy submission from defendant Arkla on this issue, the Court and the parties were able to narrow the issue to whether Arkla would be permitted to ask the following questions and develop the following answers from the witness Kay Medlin, in-house counsel for Arkla: [3]

> Question 51. Did you talk with Mr. Goresen [plaintiff's trial counsel] after receiving a copy of the October 10 letter?
>
> Yes. I talked to him on November 9, 1987.
>
> Question 52. How are you able to verify that date?
>
> I kept records at that time on a daily basis of everything I did for purposes of billing my clients. On my time-slip for that day, I reflected a conversation with Mr. Goresen.

---

1. Fed.R.Civ.P. 26(g) (emphasis supplied) provides in pertinent part:

 **Signing of Discovery Requests, Responses, and Objections.** *Every* request for discovery or *response* or objection thereto made by a party represented by an attorney *shall be signed* by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the request, response, or objection and state the party's address. The signature of the attorney or party constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. *If a* request, *response,* or objection *is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party* making the request, response, or objection, and a party shall not be obligated to take any action with respect to it until it is signed.

 If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, any appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

2. Fed.R.Civ.P. 33(a) (emphasis supplied) requires in pertinent part:

 Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. *The answers are to be signed by the person making them, and the objections signed by the attorney making them.*

3. See Exhibits to Defendant's Brief in Opposition to Plaintiff's Motion for Default or in the Alternative, for an Order Excluding Witnesses and Evidence (Jan. 29, 1990) ("Defendant's Opposition Brief"). This document was delivered to the Court on Saturday, January 27, 1990, for review prior to the hearing on January 29, 1990. See also, Transcripts of Proceedings of January 29, and January 29 & 30, 1990 attached as Court's Exhibits A & B, respectively.

Question 53. Tell us what was discussed.

We essentially restated our clients' positions—Mr. Carmack wanted to install the meters or pay us $5,000 to do so and AER could not permit it.

Plaintiff objects to this testimony on several grounds. First, plaintiff contends that defendant failed to disclose critical information requested by previous interrogatories until the eve of trial. Second, the plaintiff urged that the Supplemental Response violated Rules 26(g) and 37 of the Federal Rules of Civil Procedure. Third, plaintiff urged that the testimony arising out of the Supplemental Response violated the Scheduling Order in this case, which set a discovery cutoff deadline of October 27, 1989, and required discovery responses to be filed prior to the cutoff date absent agreement between the parties.[4] In this regard, the plaintiff's motion focused on the "Defendant's disdain for this Court's Scheduling Order", which, according to plaintiff, would be totally frustrated if critical interrogatory answers were permitted to be supplemented more than two months after discovery had closed, more than two weeks after jury selection and the afternoon before trial.[5] Finally, plaintiff's counsel, Mr. Goresen, also argued that the testimony proffered by defendant was false, that Goresen was prepared to testify to that effect, and defendant's untimely proffer of a previously undisclosed conversation involving him was in reality an effort to force him to withdraw as counsel of record on the eve of trial. In addition to preclusionary sanctions, the plaintiff sought reasonable expenses and attorney fees.[6]

Arkla responds that it was not required to supplement its prior interrogatory responses, that the information was merely cumulative of information previously disclosed during depositions, that plaintiff has not been prejudiced, that Arkla's conduct was not willful, and that plaintiff's request for sanctions is without merit. Arkla concedes, however, that the Supplemental Response was filed in violation of Rule 26(g), because it was not signed by Amy Baird, the attorney who prepared the response, and has yet to be signed by any attorney of record.

During the hearing on January 29, 1990, the Court requested defense counsel to identify the portions of the discovery depositions which allegedly disclosed the information set forth in the disputed proffer of the November 9, 1987 Goresen–Medlin conversation outlined above. Defense counsel identified Medlin's discovery deposition pages 7–20 as containing the proffered testimony. See Opposition Brief at Ex. B (Jan. 29, 1990). The proffered testimony cannot be found in the deposition excerpts identified by defense counsel.

Plaintiff's counsel, moreover, pointed out that Medlin was asked the following question during her deposition:

Q. Do you remember having any oral or [written] communications with Pat Carmack or any representative of Royalty Petroleum subsequent to August 19, 1987?

A. No, I don't specifically remember that. It may be that there is something in my file that would trigger my memory, Tom [Goresen], but right now the date doesn't help me.

Deposition of Kay C. Medlin at 22 (Nov. 1, 1989).

Weeks prior to the trial of this case, the precise date being unknown, Medlin apparently found some documents which refreshed her memory. These documents, which were Arkla's own documents found in Arkla's own files, spawned the Supplemental Response filed by defendant on the

---

**4.** See Scheduling Order at 698, 700 (July 25, 1989), attached as Court's Exhibit C. The discovery cutoff date was subsequently extended to November 1, 1989.

**5.** See Plaintiff's Motion For Default at 6 n. 4, 8 n. 6 (Jan. 25, 1990).

**6.** Mr. Goresen testified on January 30, 1990, that he spent four (4) hours at $115 per hour litigating the issues raised by defendant's Supplemental Response, and that an Associate spent five (5) hours at $80 per hour assisting him on these issues. Court's Ex. B, Tr. of Jan. 29–30, 1990 at 693.

eve of trial. Nowhere in Arkla's January 29, 1990, Brief in Opposition to Plaintiff's Motion did Arkla make any effort to show that reasonable diligence would not have uncovered these documents earlier. This was so despite a request by the Court on January 26, 1990, for such a showing.

■ The problem posed by defendant's untimely interrogatory submission is clear. Based on the previous deposition testimony of Medlin, coupled with the initial interrogatory response filed by Arkla, plaintiff's counsel, Goresen, had no expectation that on the eve of trial Arkla would assert the existence of a "one-on-one" conversation with Goresen involving a critical issue in the case. This is, at bottom, a last second trial-by-ambush tactic, which simply can not be permitted in modern federal practice. *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir.1978); *see Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). While defendant placidly responds that Goresen was a participant in this conversation, and therefore should have known of its existence, the short and simple answer to this argument is that Goresen denies the conversation took place and stands prepared to testify to that denial. Plaintiff's Motion For Default at 6 n. 4 (Jan. 25, 1990).

This situation placed Goresen in the untenable dilemma of considering withdrawal as trial counsel on the eve of trial in order to challenge the untimely submission by Arkla.[7] Under Oklahoma law a lawyer is faced with a conflict of interest when required to serve both as a trial advocate, and also as a necessary witness. 5 Okla. Stat.Ann., at Chap. 1, App. 3–A, R. 3.7 & comment (Supp.1990). That statute provides:

**Lawyer as Witness**

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

5 Okla.Stat.Ann., at Chap. 1, App. 3–A, R. 3.7(a).

Since plaintiff's counsel desired to challenge the untimely disclosure, then he was subjected to this ethical Scylla and Charybdis.

In this case, the Court has determined that the proffered testimony of Medlin concerning the alleged November 9, 1987 Goresen–Medlin conversation should be excluded pursuant to Rules 26(g) and 16(f) of the Federal Rules of Civil Procedure and the inherent supervisory authority of the Court as more fully set forth below, and Rule 403 of the Federal Rules of Evidence. Moreover, the Court has determined that an award of expenses to plaintiff's counsel is appropriate under the circumstances.

## II. DISCUSSION OF AUTHORITY FOR IMPOSITION OF SANCTIONS

### A. *Rule 26(g):*

■ The Court concludes that Fed.R. Civ.P. 26(g) requires that supplemental interrogatory responses must be signed, otherwise they shall be stricken unless promptly signed after the omission is brought to the attention of the responding party.[8] Despite hearings held on January 29 and 30, 1990, no attorney for defendant came forward to sign the Supplementary Interrogatory Response served on January

---

7. The proceedings of January 26, and 29, 1990 reflect that certain aspects of the defendant's Supplemental Response were cumulative to the prior deposition testimony of defendant's witnesses, as well as the prior interrogatory responses, and thus those portions did not prejudice plaintiff. This overlapping testimony was permitted. The Court also permitted the defendant's witnesses to supply dates for conversations they had previously testified to, and for

which the recently discovered documents supplied only a date. The *only* testimony excluded by the Court was the testimony of Medlin set forth above in response to questions 51, 52 and 53.

8. The pertinent text of Rule 26(g) is set forth above in note 1.

24, 1990. On January 30, 1990, long after the Rule 26 deficiency had been brought to the attention of defense counsel, the Court posed the following question:

> THE COURT: ... As I understand it, there has still been no signing of the response to date; is that correct?
>
> MS. BAIRD: That is correct, your Honor.

Court's Ex. B, Tr. of Jan. 29–30, 1990 at 28. The filing remains unsigned today despite the Rule's provision allowing the document to be signed after the fact, despite Ms. Baird's "sincere apology" to the Court for not signing the document, and despite defense counsel's claim that "it satisfies the requirements of Fed.R.Civ.P. 26." See Defendant's Show Cause Brief at 11 & 15 n. 3 (Feb. 5, 1990). Here, Arkla's proffer grew out of the Supplemental Response filed on the eve of trial. Accordingly, the Court strikes the Supplemental Response, which remains unsigned in violation of Rule 26. Had the Supplemental Response been signed, then the Court would be prepared to find that Rule 26 was violated because the Supplemental Response was filed by Amy Baird for improper purposes, including harassment, unnecessary delay, and needless increase in cost of litigation. Fed. R.Civ.P. 26(g).[9] Although Rule 26(g) sanctions are not available against Ms. Baird as a result of her earlier failure and subsequent refusal to sign the Supplemental Interrogatory Response, some of the factors set forth in Rule 26(g) come into play in deciding whether the filing of this document so circumvented or vitiated the Court's Scheduling Order in this matter that it represents a violation of Fed.R. Civ.P. 16(f), discussed below. As indicated above, Rule 26 prohibits the filing and signing of discovery papers which are filed for an improper purpose, namely to harass or cause unnecessary delay or needless increase in the cost of the litigation. Fed.R. Civ.P. 26(g)(2). The Court finds that is precisely what occurred here in respect to the proffer arising out of the Supplemental

Response. See Court's Ex. B, Tr. of Jan. 29–30, 1990 at 6–9.

There was no agreement in this case to allow defense counsel to supplement its interrogatory responses on the eve of trial. See Court's Ex. C, Scheduling Order at numbered ¶ 2. Further, there was no credible explanation given as to why the documents which gave rise to the proffer could not have been discovered earlier. The documents were, after all, the defendant's own documents. See Court's Ex. B, Tr. of Jan. 29–30, 1990 at 8. Moreover, the documents giving rise to the proffer were discovered "within the last couple or three weeks" prior to the filing of the Supplemental Response. Court's Ex. A, Tr. of Jan. 29, 1990 at 6. As the Court found on January 29, 1990:

> THE COURT: ... The specific prejudice to the plaintiff in this case is apparent. This involves a conversation between Medlin and Goresen. The substance of the conversation is disputed by Goresen. It was not disclosed in the deposition. It could place Goresen in a position of having to testify in this case and it is not supported by the previous discovery. Apparently there were general references to communications between Goresen, general references to communications between counsel but the portion shown to me by Mr. Goresen clearly shows that as of the date of the deposition the witness Medlin was specifically asked: "Do you remember having any communications with Pat Carmack or any representative of Royalty Petroleum subsequent to August 19th, 1987?"
>
> A. "No, I don't specifically remember that. It may be that there is something in my file that would trigger my memory, Tom, but right now the date doesn't help me."
>
> That's at page 22. Well, the notion that you can discover this triggering information the night before trial which would cause plaintiff's counsel to be in

---

**9.** While sanctions cannot be imposed under Rule 26(g) unless the discovery response is signed, the Court notes that a failure to timely supplement interrogatories pursuant to Rule 26(e) could subject a party to Rule 26(g) sanctions if the untimely supplement was signed. *E.g., In re Yagman,* 796 F.2d 1165, 1187 (9th Cir.1986).

the position to either have to testify in this case or to withdraw and then to disclose it at that time without any showing of reasonable diligence that it couldn't have been disclosed sooner is simply something that I can't put my stamp of approval on. I will not put my stamp of approval on that.

Court's Ex. B, Tr. of Jan. 29 & 30, 1990 at 9–10. The Court finds that Arkla's counsel, for improper purposes, threw a grenade into plaintiff's trial camp the night before trial began. Litigation, however, is not war. To the contrary, it is supposed to be a quiet, dignified search for the truth. The defendant's last second filing circumvented the Court's orderly schedule for that search.

### B. *Rule 16(f) and Inherent Powers of the Court:*

Rule 16(f) reads:

> **Sanctions.** If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f).

On July 25, 1989, this Court issued a Scheduling Order establishing a discovery cutoff date in this matter for October 27, 1989. See Court's Ex. C, Scheduling Order, numbered ¶ 2 (July 25, 1989). The deadline was subsequently extended to November 1, 1989. See Order (Oct. 30, 1989).

Responses to interrogatories were due *"prior to* discovery cutoff." Court's Ex. C, Scheduling Order, numbered ¶ 2 (emphasis in original). Here, the Court finds that defense counsel's Supplemental Response filed more than two months after discovery cutoff, more than two weeks after jury selection and on the eve of trial, totally frustrates the intent and purpose of this Court's Scheduling Order.

■ In managing and controlling its caseload, the Court has the inherent and statutory power, and mandatory duty to sanction a party or attorney who violates the rules. *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *In re Sanction of Baker*, 744 F.2d 1438, 1442 (10th Cir.1984) (en banc), *cert. denied sub nom.*, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). In exercising this power, the Court has the authority to enforce its orders with a view toward promptly processing and adjudicating its lawsuits. *Stanley v. Continental Oil Co.*, 536 F.2d 914, 916–17 (10th Cir. 1976).

■ With regard to scheduling orders and trial preparation, the Court also has "very broad" discretion in fashioning appropriate sanctions under Rule 16(f) for failure to comply with the pretrial orders of this Court. Fed.R.Civ.P. 16(f); *Roy v. American Prof. Mktg., Inc.*, 117 F.R.D. 687, 692 (W.D.Okla.1987). As the Tenth Circuit stated in *In re Sanction of Baker:*

> [T]here can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16, indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.

744 F.2d at 1440.

The *Baker* court went on to state that the primary purpose for sanctions in the Rule 16 context is to insure reasonable

management requirements for case preparation, with the compensation of adversely affected parties serving only a secondary purpose for the imposition of sanctions. *Id.* at 1441. For failure to obey a scheduling order, Rule 16(f) specifically authorizes sanctions that are just, including those set forth in Fed.R.Civ.P. 37(b)(2)(B), (C), (D).

■ The Tenth Circuit has addressed the propriety of default and dismissal with prejudice as a sanction in the case of *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458 (10th Cir.1988). The considerations set forth by the Tenth Circuit in *Ocelot* were as follows:

As we have recently had occasion to reiterate, dismissal with prejudice is a drastic sanction, and one that must be grounded in some fault on the part of or binding upon the party.

Consequently, we have upheld dismissals and default where the parties themselves neglected their cases or refused to obey court orders, or where counsel engaged in deliberately dilatory tactics or other trial strategy intended to inure to the benefit of the client. We have reversed dismissals and defaults, or remanded for more specific findings on the parties' responsibility, where inadvertence or simple neglect were the basis of the court's decision. In such cases, the deterrent effect of a default or dismissal is likely to be substantially achieved through lesser sanctions. We have therefore been reluctant to affirm on the basis of isolated instances of noncompliance or where the district court's findings did not make specific reference to fault by the parties or intentional conduct by their attorneys, and did not explain why lesser sanctions would be ineffective.

We recognize, however, that it is not always easy to determine whether a course of conduct is the result of mere inattention by counsel or is a matter of strategy on their part. Under the rule laid down in *In re Sanction of Baker*, 744 F.2d 1438, which requires that the impact of the sanction be lodged where the fault lies, a number of factors should be considered by the district courts in making their findings on the issue of fault. Those factors include "(1) the degree of actual prejudice to the defendant ...; (2) the amount of interference with the judicial process ..., and (3) the culpability of the litigant." "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits ..., is dismissal an appropriate sanction."

847 F.2d at 1464–65 (citations omitted).

Royalty's request for default is too harsh and cannot be supported. Sanctions must be tailored to fit the violation. *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395–96 (10th Cir.1988); *Ocelot Oil Corp v. Sparrow Indus.*, 847 F.2d at 1458; *Meade v. Grubbs*, 841 F.2d at 1520–22 & nn. 6 & 7.

On the other hand, it is equally clear to this Court that lesser sanctions than dismissal are necessary to deter the dilatory tactics employed by defense counsel in this case. Specifically, based on all the circumstances, the Court finds that the filing of the Supplemental Response on the eve of trial was not merely the product of "inattention by counsel" but part and parcel of a strategy which, if permitted, would "gut" the effectiveness of scheduling orders issued at the outset of every case.

Subsequent events have not changed the Court's view that the document was filed for an improper purpose and tends to vitiate the Scheduling Order issued in this case, which was designed to complete discovery and other critical events in an orderly fashion. Aside from the failure of any defense counsel to come forward and sign the Supplemental Response, defense counsel's "show cause" brief, filed on February 5, 1990, contains attempted justifications which are wholly unsupported by the record.[10]

---

10. The Court on January 29 and 30, 1990 directed Arkla's counsel, Amy Baird, to file a brief showing cause why she should not be personally sanctioned in this matter. That brief, which was filed on February 5, 1990, will be referred to herein as "Defendant's Show Cause Brief" on behalf of defendant and defense counsel.

First, defense counsel advances the argument that the documents giving rise to the proffer, and which were used to refresh the witness' memory at trial, were not turned over because legal research had been conducted which revealed that the documents were only required to be produced at the time of trial and not before. See Defendant's Show Cause Brief at 9–10 and Exs. G & M, affidavits of Baird, and Hagedorn. Implicit in this statement to the Court is the notion that defense counsel intended to produce the documents to plaintiff's counsel at trial pursuant to Rule 612. Fed.R. Evid. 612. Unfortunately, the truth of the matter is that no such intention existed, as exemplified by defense counsel's lack of familiarity with Rule 612 at trial and the attempted justifications advanced by defense counsel at trial for not producing the records.

At the hearing on January 29, 1990, defense counsel was questioned closely on the failure to produce the documents in question. The following exchange occurred:

> [THE COURT:] If you give somebody a piece of paper and you use it to refresh their memory, opposing counsel gets a chance to review it. Why are you doing this?
>
> MS. BAIRD: Your Honor, Ms. Medlin does not intend to use them on the stand.
>
> THE COURT: It makes no difference whether she intends to use them on the stand. You want me to read this to you? ...

Court's Ex. A, Tr. of Jan. 29, 1990 at 3–4.

The Court then read the pertinent portions of Rule 612 to Ms. Baird, after which she conceded that the "use of the stand" argument was wide of the mark and further stated "we'll be happy to provide plaintiff's counsel with a copy of it". *Id.* at 4.

Contrary to the current representations in Defendant's Show Cause Brief, there was never any hint at trial that defense counsel intended to disclose the documents to plaintiff's counsel while Medlin was on the stand pursuant to Rule 612, much less disclose them at all. The Court's directive that the documents be produced forthwith, rather than waiting for Medlin's direct examination to commence, arose out of the fact that Medlin's testimony had already been postponed one day and cross examination would have to be postponed further if plaintiff's counsel requested the opportunity to study the documents utilized by Medlin to refresh her memory for trial. The hearing on January 29, 1990 reveals the following exchange:

> THE COURT: ... You told me in your filing that you did this only out of the spirit of fair play. What I continue to be amazed of is that you have a witness, Kay Medlin, who is, as I understand it, an attorney for ARKLA; is that right?
>
> MS. BAIRD: She is in-house now. She was not at the time this took place.
>
> THE COURT: And she is going to testify in this case right?
>
> MS. BAIRD: Yes, sir.
>
> THE COURT: And she is going to provide what you think is critical testimony, right?
>
> MS. BAIRD: Yes, sir.
>
> THE COURT: And she has got this document she used to refresh her memory, right?
>
> MS. BAIRD: Yes, sir.
>
> THE COURT: And it falls squarely within the Federal Rules of Evidence regarding refreshing memory.
>
> MS. BAIRD: We'll be happy to provide it to plaintiff.
>
> THE COURT: I know you're happy now but why haven't you been happy in the last month or so when you found out she was going to use it to refresh her memory?
>
> MS. BAIRD: Well, Your Honor, I don't believe Ms. Medlin discovered those records or obtained them until relatively recently.
>
> THE COURT: Well, what does "relatively recently" mean?
>
> MS. BAIRD: Well, I believe it was within the last couple or three weeks.
>
> THE COURT: Well, why didn't you give it to them?

MS. BAIRD: I do apologize for the oversight in not providing them to Mr. Goresen earlier.

. . . .

THE COURT: ... All right. Now is there anybody that wants to argue that this document should not be produced for purposes of this proceeding because I'm prepared to entertain any more legal argument we have on this.

MS. BAIRD: No, sir.

Court's Ex. A, Tr. of Jan. 29, 1990 at 5-6.

Clearly, the above record does not support defense counsel's recently advanced contention that the documents would have been turned over at trial to plaintiff's counsel pursuant to Rule 612. Indeed, when the Court asked the final question outlined above, which should have solicited the attempted justification now forthcoming from defense counsel, nothing was offered. The Court thus rejects defense counsel's post hoc effort to establish a good faith justification for her conduct based on legal research allegedly conducted prior to trial involving Fed.R.Evid. 612. The Court finds the facts, whether viewed objectively or subjectively, fail to establish good faith. Moreover, the Court finds that but for the Court's intervention, defense counsel had no intention of producing the documents pursuant to Rule 612 or any other rule. Additionally, the Court finds that if the alleged research regarding Rule 612 was actually conducted, counsel would not have contended that the Rule was triggered only by the witness utilizing the documents "on the stand."

The Court further rejects defense counsel's contention that the response was filed "in the spirit of cooperation and fair play," finding instead that the Supplemental Response was filed for the improper purposes outlined above. Defendant's Show Cause Brief at 8.

The Court accepts defense counsel's representation that she never "intended Mr. Goresen would have to withdraw as plaintiff's counsel", as well as her representation that she "never moved to disqualify Mr. Goresen from representing plaintiff." Defendant's Show Cause Brief at 8–16. In-, deed, if Goresen did not withdraw, the proffered testimony of Medlin which surfaced on the eve of trial would have worked uniquely to Arkla's advantage. If Goresen did not testify, thus failing to rebut the testimony of Medlin, then this would be favorable to Arkla. If Goresen did testify, he was then placed in the anomalous situation of urging his own credibility to the jury. In short, Arkla's filing of the response on the eve of trial was a "cheap shot", and defense counsel either knew or should have known this when it was filed. Also, the Court finds that the trial preparation of plaintiff's counsel was severely prejudiced because this filing was "dropped in his lap" on the eve of trial.

Finally, the Court rejects defense counsel's assertion that "the actual date [November 9, 1987] of that conversation was the *only new fact* regarding the conversation that plaintiff's counsel received through the supplementary interrogatory response." Defendant's Show Cause Brief at 7 (emphasis supplied). The Court repeatedly has asked defense counsel to reveal to the Court where the proffered testimony regarding the November 9, 1987 Medlin/Goresen conversation could be found in Medlin's deposition testimony. The reason defense counsel has failed to locate the testimony is because it is not in the deposition.

C. *Fed.R.Evid. 403:*

■ Fed.R.Evid. 403 reads:

**Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

Therefore, even if evidence is relevant, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The Court finds that the testimony covered in ques-

tions 51, 52 and 53 in this case is unfairly prejudicial based on the untimely nature of the disclosure coupled with the fact that the hands of plaintiff's counsel would be tied because of the difficulty he faces if he attempts to serve both as a witness to dispute the content of the disclosure and also serve as trial counsel. *See* 5 Okla. Stat. at Chap. 1, App. 3–A, R. 3.7(a) (qualified prohibition of trial advocate serving as a witness). The Court believes the admission of the proffered testimony would work an undue hardship on plaintiff and plaintiff's counsel, and would be unduly prejudicial. Moreover, if Goresen attempted to rebut the testimony, then there is the possibility of further confusing the jury. Accordingly, separate and apart from the preclusionary sanctions entered by the Court, the Court excludes the proffered testimony as an evidentiary matter pursuant to Fed. R.Evid. 403. See Court's Ex. B, Tr. of Jan. 29 & 30, 1990, at 10–12. Such an evidentiary ruling is reviewed by the appellate courts on an abuse of discretion standard. *United States v. Cowsen*, 530 F.2d 734, 738 (7th Cir.), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976).

### D. *Fed.R.Civ.P. 37:*

Royalty urges this Court to impose sanctions under Fed.R.Civ.P. 37. That Rule provides that sanctions may be imposed for failure to comply with orders compelling an answer or discovery. No such order was requested or entered in this case, and therefore the Court finds that Rule 37(b) is simply inapplicable to the matter at hand. Court's Ex. B, Tr. of Jan. 29 & 30, 1990, at 3.

### III. AWARD OF EXPENSES

■ The Court finds that an award of sanctions against Amy Baird is proper in this case. Fed.R.Civ.P. 16(f). Sanctions must be imposed where the fault lies. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d at 1465; *In re Sanction of Baker*, 744 F.2d at 1442. Here, the fault lies with defendant's counsel, Amy Baird, for not complying with Rule 26 and for circum-

venting the Scheduling Order in this case in violation of Rule 16(f).

In addition to other arguments advanced, defense counsel advances one central argument which she claims "underlies" all issues in this case and establishes that an award of expenses would be unjust. The argument is that Arkla was under no duty to supplement its interrogatory response, and therefore no sanctions can be imposed for filing something which was not required. Significant portions of defense counsel's briefs are directed to this point. See Defendant's Brief In Opposition To Plaintiff's Motion For Default at 23–33 (Jan. 27, 1990); Defendant's Show Cause Brief at 7–22 (Feb. 5, 1990).

This argument is doubly flawed. First, given the nature of the information required by Interrogatory # 3, and the contents of the proffered testimony of Medlin revealed on the eve of trial, the Court believes that defense counsel had a duty to supplement the interrogatory response and to supplement it in a timely fashion. Fed. R.Civ.P. 26(e); Advisory Committee Note, 48 F.R.D. at 508; *see Shelak v. White Motor Co.*, 581 F.2d at 1159–60; *Davis v. Marathon Oil Co.*, 528 F.2d 395, 403–04 (6th Cir.1975), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); *see also Barker v. Bledsoe*, 85 F.R.D. 545, 548–49 (W.D.Okla.1979); *see generally* 8 C. Wright & A. Miller, *Federal Practice & Procedure: Civil*, at §§ 2048–49, pp. 319–24 (1970); 4 J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice*, at ¶ 26.81, pp. 26–513 to 26–519 (1989). This could have been done had reasonable diligence uncovered Arkla's own documents. Moreover, defense counsel's recent claim that she had no duty to supplement the interrogatory responses which she "chose" to supplement lacks credibility.

Second, and more importantly, even if Arkla had no duty to supplement its interrogatory responses, this does not cleanse the filing of a Supplemental Response at the eleventh hour for an improper purpose, nor does it justify the filing of a Supplemental Response at the eleventh hour which circumvents or vitiates the orderly

progress of this case as established by the Court's Scheduling Order. Whether a duty to supplement existed or not, the Court finds the conduct of defense counsel in this case to be sanctionable, both from an objective and subjective standpoint, as previously discussed.

Accordingly, after reviewing plaintiff's request for sanctions, the Court finds that defendant's noncompliance with Rules 26(g) and 16(f) was not substantially justified, that the Supplemental Response was an attempt to circumvent and vitiate this Court's Scheduling Order and was filed for improper purposes all in violation of Rule 16(f), and that an award of expenses is just. However, the Court finds some reduction is proper due to plaintiff's misdirected request for sanctions under Fed.R.Civ.P. 37, and also because portions of the Supplemental Response were not new information.[11]

Therefore, the Court finds the following items to constitute a reasonable award of expenses:

1. Based on Mr. Goresen's testimony of January 30, 1990, and a reduction by the Court, the time of plaintiff's Counsel of 2 hours at $115 per hour, for a total of $230.

2. Based on Mr. Goresen's testimony of January 30, 1990, and a reduction by the Court, the time of the Associate of plaintiff's Counsel of 2 hours at $80 per hour, for a total of $160.

3. Based on counsel Stephen Moriarty's affidavit of February 12, 1990, Mr. Moriarty's time of 2 hours at $120 per hour and Mr. Goresen's time of 1 hour at $115 per hour, for a total of $355. See *Minute Order*, No. CIV–89–495–P (Feb. 7, 1990).

4. The Court's time of 4 hours at $600 per hour, representing only a portion of the time spent by this Court in reviewing defense counsel's attempted justifications and time devoted to the necessary court hearings generated by the filing of the Supplemental Response, for a total of $2,400.[12]

**11.** See note 6 above regarding requested attorney hours.

**12.** *Robinson v. Moses,* 644 F.Supp. 975, 982–83 (N.D.Ind.1986) (judicial time and wasted court

The total sanction encompassed by items 1–4 above is $3,145.

## IV. CONCLUSION

ACCORDINGLY, THE COURT HEREBY ORDERS AS FOLLOWS:

WITHIN TEN (10) DAYS OF THIS ORDER COUNSEL AMY BAIRD WILL PAY DIRECTLY TO PLAINTIFF'S COUNSEL THE SUM OF $745, AND DIRECTLY TO THE CLERK OF THIS COURT THE SUM OF $2,400 FOR THE BENEFIT OF THE GENERAL COURT FUND.

SHOULD COUNSEL AMY BAIRD DESIRE TO APPEAL THIS ORDER, THEN THE ENTIRE SUM OF $3,145 SHALL BE PAID TO THE CLERK ON THE ABOVE DATE TO BE PLACED IN AN INTEREST–BEARING ACCOUNT, AND TO BE DISBURSED AS SET FORTH ABOVE UPON FINAL RESOLUTION OF THIS MATTER IF IT IS AFFIRMED BY THE COURT OF APPEALS, OR RETURNED TO MS. BAIRD IF THIS ORDER IS REVERSED. THE COURT FURTHER ORDERS THAT THE SANCTION SHALL BE BORNE BY DEFENSE COUNSEL PERSONALLY, AND SHALL NEITHER BE DIRECTLY NOR INDIRECTLY PAID BY THE CLIENT. THE COURT FURTHER DIRECTS THAT A COPY OF THIS ORDER SHALL BE DISTRIBUTED TO ALL UNITED STATES DISTRICT JUDGES, BANKRUPTCY JUDGES, AND MAGISTRATES IN THE WESTERN DISTRICT OF OKLAHOMA, AND THAT COUNSEL AMY BAIRD STAND REPRIMANDED FOR HER FAILURE TO SIGN THE JANUARY 24, 1990 SUPPLEMENTAL RESPONSE IN VIOLATION OF RULE 26(g) AND FOR HER CIRCUMVENTION AND FRUSTRATION OF THIS COURT'S SCHEDULING ORDER BY FILING THE SUPPLEMENTAL RESPONSE IN AN UNTIMELY MANNER AND FOR AN IMPROPER PURPOSE, IN VIOLATION OF RULE 16(f).

IT IS SO ORDERED.

resources factored into sanction at a rate of $600 per hour). No time has been charged for the drafting of this Order.

EXHIBIT A

REPORTER'S TRANSCRIPT OF
PROCEEDINGS HAD ON
JANUARY 29, 1990

EXCERPT OF PROCEEDINGS

Before the Honorable LAYN R. PHIL-
LIPS, Judge Presiding

APPEARANCES:

Mr. Thomas P. Goresen, Attorney at
Law, Oklahoma City, Oklahoma, appeared
on behalf of the plaintiff.

Mr. Stephen J. Moriarty, Attorney at
Law, Oklahoma City, Oklahoma, appeared
on behalf of the plaintiff.

Mr. Frank M. Hagedorn, Attorney at
Law, Tulsa, Oklahoma, appeared on behalf
of the defendant.

Ms. Amy L. Baird, Attorney at Law,
New Orleans, Louisiana, appeared on be-
half of the defendant.

PROCEEDINGS:

\* \* \*

THE COURT: Okay. By the way, has
this log been provided to you?

MR. GORESEN: What's that?

THE COURT: This log she keeps talking
about.

MR. GORESEN: No, Your Honor.
None of this information—they say I might
have it and I don't recognize it and I've
been told now that we didn't specifically
ask for that and that's why it hasn't been
provided or they don't have control over
Blanchard Walker.

THE COURT: Wait a minute. Wait a
minute. Why aren't you folks giving them
this log that is this new found critical dyna-
mite evidence?

MS. BAIRD: Your Honor, we have pro-
duced the telephone log that shows Mr.
Burleson's conversations. Ms. Medlin's
recollection of the date being in November
was based on her review of the Blanchard
Walker time sheets which are the property
of Blanchard Walker, the law firm which
she was a partner in at the time. Mr.
Goresen could have subpoenaed those

records but did not do so. I represent
ARKLA and I'm not authorized, as I ex-
plained to him earlier in the discovery pro-
cess, to turn over those records to him.

THE COURT: Well, when she reviewed
them, did she have them? How did she
review them?

MS. BAIRD: No, sir, she didn't.

THE COURT: How did she get them to
review them?

MS. BAIRD: She reviewed them when
she we requested them from Blanchard
Walker. The same way that Mr. Goresen
could have requested them and chose not
to.

THE COURT: What I don't understand
is you say she reviewed them. How did
she get them in her possession?

MS. BAIRD: She asked Blanchard Walk-
er to provide them to her and they did so.

THE COURT: All right. So where are
they now?

MS. BAIRD: She has them in her posses-
sion, I believe.

THE COURT: Oh, gosh. You've got to
be kidding. And you haven't given those,
the ones that she used to refresh her mem-
ory, to counsel?

MS. BAIRD: We will be happy to pro-
vide them.

THE COURT: I mean, have you read the
Federal Rules of Evidence?

MS. BAIRD: Your Honor, these are not
covered by his request for production.

THE COURT: Separate and apart, this is
the gosh-darnedest thing I've ever heard in
my life. Read the Federal Rules of Evi-
dence. If you give somebody a piece of
paper and you use it to refresh their memo-
ry, opposing counsel gets a chance to re-
view it. Why are you doing this?

MS. BAIRD: Your Honor, Ms. Medlin
does not intend to use them on the stand.

THE COURT: It makes no difference
whether she intends to use them on the
stand. You want me to read this to you?
Boy, I'll tell you, you folks are really some-
thing. I mean, whatever happened to a
trial being a search for the truth?

Rule 612, "Writing used to refresh memory. Except as otherwise provided by the Jencks Act, section 3500 of the U.S.Code, if a witness uses a writing to refresh memory for the purpose of testifying, either, (1) while testifying or, (2) before testifying." And it goes on to discuss the requirements of production.

Now, you see, your little nitpicky point about, "She is not going to use it today," doesn't get anywhere. Do you see that?

MS. BAIRD: Yes, sir, and we'll be happy to provide plaintiff's counsel with a copy of it.

THE COURT: Well, tell me why you have been taking this handfisted hardball position that just makes you look silly.

MS. BAIRD: Your Honor, we certainly never intended to do that. In fact, our only purpose in supplementing the interrogatory response was to try to provide a more complete answer to Mr. Goresen. We felt the substance of all these interrogatories was contained in previous discovery.

THE COURT: I understand that. You told me in your filing that you did this only out of the spirit of fair play. What I continue to be amazed of is that you have a witness, Kay Medlin, who is, as I understand it, an attorney for ARKLA; is that right?

MS. BAIRD: She is in-house now. She was not at the time this took place.

THE COURT: And she is going to testify in this case, right?

MS. BAIRD: Yes, sir.

THE COURT: And she is going to provide what you think is critical testimony, right?

MS. BAIRD: Yes, sir.

THE COURT: And she has got this document she used to refresh her memory, right?

MS. BAIRD: Yes, sir.

THE COURT: And it falls squarely within the Federal Rules of Evidence regarding refreshing memory.

MS. BAIRD: We'll be happy to provide it to plaintiff.

THE COURT: I know you're happy now but why haven't you been happy in the last month or so when you found out she was going to use it to refresh her memory?

MS. BAIRD: Well, Your Honor, I don't believe Ms. Medlin discovered those records or obtained them until relatively recently.

THE COURT: Well, what does "relatively recently" mean?

MS. BAIRD: Well, I believe it was within the last couple or three weeks.

THE COURT: Well, why didn't you give it to them?

MS. BAIRD: I do apologize for the oversight in not providing them to Mr. Goresen earlier.

THE COURT: This is what absolutely amazes me about these proceedings. All right. We have had a knockdown dragout over it and now I will finally order you to produce it and then what do we get out of it? I mean, how many hours did you get to bill your client for this? Did you go back and tell them, "Boy, we were really tough. We didn't give them that document." I mean, that's really something to be proud of. This is so basic, so fundamental. It goes to the heart of the process, the truth seeking process. Please, practice this way in Louisiana or someplace else but don't do it in this court because it's not the way that it should be done.

Give them the piece of paper now.

By the way, the remainder of the rule says, "An adverse party is entitled to have the writing produced at the hearing to inspect it, to cross-examine the witness thereon and to introduce into evidence those portions which relate to the testimony of the witness."

All right. Now is there anybody that wants to argue that this document should not be produced for purposes of this proceeding because I'm prepared to entertain any more legal argument we have on this.

MS. BAIRD: No, sir.

THE COURT: All right.

All right. Then Mr. Goresen, it seems to me that with respect to this first point, if

your concern is the timing and if they have got a document that they are refreshing the witness' memory with and it is produced to you, I'm not going to exclude the testimony if all you can do is show me—if the only thing you can do is say the thing they are missing is the date and the only representation that defense counsel makes is they are going to testify to exactly what is in the deposition and the only thing they are going to add is the date. Do you disagree with that? If I enter an order here right now, I'm not going to let Kay Medlin testify to one thing that is in her deposition except dates and I'm going to let her refresh her memory by this documentation by way of dates and I will let you introduce, if you desire, their supplemental interrogatories responses to show that it was filed on the eve of trial, I will let you impeach on the grounds that it was either recently obtained or fabricated, whatever you want to argue. I mean, as long as there is a reasonable evidentiary basis for your argument. I'm hard-pressed to say, unless it is new substantive testimony, that you should have a remedy here.

MR. GORESEN: I guess the only thing I can say, Your Honor, is we don't believe it took place and I don't know these records. I will certainly look at them before she testifies but, you know, they have—you know, objected on attorney-client privilege. If this—

THE COURT: We're not here to relitigate discovery disputes. You had an option there and the option was to move to compel it. All I'm saying is—by the way, if Ms. Medlin relied on anything else to prepare her testimony, I think counsel now understand Rule 612 and understands that I'm going to order production of it. So, it will be forthcoming. I'm going to have a discussion here with Ms. Medlin in a minute and I'm going to tell her, "Don't you say one thing that is not in your deposition unless you get an order from the Court otherwise." So she is confined to her deposition on these items.

MR. GORESEN: If she is confined to the deposition, then I don't have any objection.

THE COURT: With the exception that I will let her put dates on it based on her refreshed memory and I'm going to let her do that because I don't think you've got a complaint otherwise. You've got potential impeachment but you don't have a complaint for excluding the evidence because people can refresh their memory and, in this instance, I'm going to permit her to do it. I still have some questions about this log that ARKLA couldn't find in its own files but I will take that up later.

MR. GORESEN: Your Honor, I'm not going to belabor the point. The only argument I would make is I have had no opportunity to discover into the veracity of these documents or, you know, pursue it any farther. I mean, I haven't even been able to see it today.

THE COURT: First of all, first of all, you have the right under the Federal Rules of Evidence that I'm giving you. For reasons best known to these folks, they chose to play hard ball and not provide it. I have just given it to you under the rule of evidence. That's the rule that governs in these proceedings. They say you could have subpoenaed, done all these other things. I don't need to rule on that because there is a specific rule of evidence that apparently nobody bothered to read so they could avoid disclosing this until the last possible minute and now I have done it. So, it's yours. Tell me what remedy you are entitled to other than Rule 612.

MR. GORESEN: I would just—I think the unfair surprise on the day they are putting on their case as to no ability to go out and discover any rebuttal witnesses on this evidence is highly prejudicial.

THE COURT: All right. I will reject that argument. Here is what we're finally going to get down to eventually and that is: Do you represent that the only thing Ms. Medlin is going to testify to is exactly what is in her deposition with the exception of adding dates?

MS. BAIRD: With respect to the installation, their request that they install just the tap and meter, that's correct, Your Honor, but, as I pointed out earlier, there are other

substantive areas in her deposition that she'll want to testify to and in addition there may be testimony that we want to elicit which he didn't ask about in her deposition and, of course, we'll want to feel free to elicit that but—

THE COURT: All right.

MS. BAIRD: —with respect to—

THE COURT: Wait a minute. Wait a minute. Stop. You know, when I put my hand up like that it means stop. This is why being a federal judge is really more like being a babysitter than it is like being a judge at times because I'm going to have to take about three hours and monitor this dispute out. 90 percent of the lawyers in this district would have had this worked out between them but I'm going to hold everybody's hand and go through it.

All right. I'm going to take these two guilty pleas and then I'm going to send the jury out until one o'clock today and then I'm going to come back and I'm going to go through everyone of these items. I will rule on them one at a time. At the end of this I'm going to charge some counsel the fees associated with this hearing. It has been a total waste of time. It's been abusive of the process and I have had it.

All right. Please leave. Beverly, please retrieve the lawyers in the criminal case.

Please give to opposing counsel any other documents that you already know are going to be required by Rule 612 so I don't have to make additional orders in this case.

\* \* \*

A True and Correct Transcript
Certified: /s/ T. Gregory Bloxom
T. Gregory Bloxom
United States Court Reporter
Western District of Oklahoma

EXHIBIT B

REPORTER'S TRANSCRIPT OF PROCEEDINGS HAD ON JANUARY 29 & 30, 1990

EXCERPT OF PROCEEDINGS REGARDING SANCTIONS

Before the Honorable LAYN R. PHILLIPS, Judge Presiding

APPEARANCES:

Mr. Thomas P. Goresen, Attorney at Law, Oklahoma City, Oklahoma, appeared on behalf of the plaintiff.

Mr. Stephen J. Moriarty, Attorney at Law, Oklahoma City, Oklahoma, appeared on behalf of the plaintiff.

Mr. Frank M. Hagedorn, Attorney at Law, Tulsa, Oklahoma, appeared on behalf of the defendant.

Ms. Amy L. Baird, Attorney at Law, New Orleans, Louisiana, appeared on behalf of the defendant.

INDEX:

THOMAS P. GORESEN

Examination by the Court........... 693
Cross Examination by Ms. Baird .... 693

(EXCERPT OF PROCEEDINGS—JANUARY 29, 1990)

\* \* \*

THE COURT: All right. First, this will be the ruling of the Court with respect to the testimony in controversy offered by the proffered witness Kay Medlin. The Court has before it a number of submissions that the parties have made concerning this. First of all, the Court has before it an initial motion for preclusion of the evidence by the plaintiff in the case. That motion primarily focused on Rule 37. As I have indicated previously there is not a violation of Rule 37 here because there was no specific discovery order regarding the supplemental interrogatories in question. The Court also has before it the interrogatory in which Mr. Goresen asked for the nature of the conversations in question, the supplementary interrogatory response that was filed in violation of Rule 26(g) by defense counsel in this case and—by the way, what is the shorthand version for your firm's name, counsel?

MS. BAIRD: The full name is Lemle and Kelleher.

THE COURT: All right. I will refer to this as the Lemle firm. It was filed in

violation of Rule 26(g) by the Lemle firm. No attorney has taken credit for the filing and this is understandable to me because Rule 26(g) clearly states that, "Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name whose address shall be stated." This was clearly signed in violation of Rule—filed in violation of Rule 26(g) because no one signed it. It was prepared by the Lemle firm and it is represented to the Court that this was merely an oversight but this entire controversy could have been avoided simply by striking the filing because it was an improper filing under the Federal Rules of Civil Procedure.

All right. Next the Court has reviewed the deposition of Kay Medlin, specifically the portion at page 22 that Mr. Goresen directed me to. I have also reviewed the proffer in this case and the proffer in this case was submitted pursuant to Court directive to identify those portions of the testimony that was in dispute. The only portions that were submitted to the Court for ruling were these questions and these answers:

Question number 51: "Did you talk with Mr. Goresen after receiving a copy of the October 10th letter?"

Answer: "Yes. I talked to him on November 9th, 1987."

Question 52: "How are you able to verify that date?"

"I kept records at that time on a daily basis of everything I did for purposes of billing my clients. On my time slip for that day I reflected a conversation with Mr. Goresen."

Question 53: "Tell us what was discussed."

"We essentially restated our clients' positions. Mr. Carmack wanted to install the meters or to pay us $5000 to do so and AER could not permit it."

Question 54: "Did you hear anything further from Mr. Goresen after that conversation?"

"Yes. November 19th, 1987."

Now, first of all, as I understand it, there is a letter with respect to that last question and answer; is that correct, Mr. Goresen?

MR. GORESEN: Yes.

THE COURT: You don't object to that letter coming in because that's already been offered and received in evidence, correct?

MR. GORESEN: The plaintiffs admitted that in evidence.

THE COURT: All right. So actually you didn't object to question 54 and answer 54, did you, except insofar as it related to the "after that conversation" portion of the question?

MR. GORESEN: Yes, Your Honor.

THE COURT: All right. That will be my ruling with respect to the exclusion of this evidence because they clearly will be able to go into the letter.

All right. I cite that proffer for the reason that I asked defense counsel to indicate to me where I could find these topics and specifically this information in the prior testimony of Ms. Medlin. Counsel for the defendant indicated that I could find it in exhibit B to their opposition to the plaintiff's motion at pages 8 through 17. I read that and I can't find it. It's my view that these conversations that Ms. Medlin specifically says she has with Mr. Goresen were not included in that deposition. Specifically the substance of those conversations were not included in that deposition.

The Court believes this is a violation of several rules. I say this reluctantly but it seems clear to me that this document was filed for an improper purpose. I cannot find, as indicated by the defense, that it was filed in the spirit of fair play. Rather, it appears within the meaning of Rule 26(g) that it was filed for an improper purpose, namely to harass or to cause unnecessary delay or needless increase in the cost of the litigation. On the other hand, there is not a basis for sanctioning defendant's counsel. Ma'am, let me ask you to state your full name for the record.

MS. BAIRD: My name is Amy Baird.

THE COURT: Amy Baird?

MS. BAIRD: B-a-i-r-d.

THE COURT: All right. There is not a basis for sanctioning Amy Baird under Rule 26(g) because 26(g) clearly applies to individuals who have signed documents in violation of the rule. I've seen this a lot in connection with Rule 11 violations where attorneys simply didn't sign the document because it constituted a violation of the rule and had I detected that at the outset I would have shortened these hearings substantially because this document is simply one that should not have been permitted to have been filed under Rule 26 of the Federal Rules of Civil Procedure because on its face it was not in compliance. Nevertheless, the Court makes those comments on what it would have done had counsel signed the document.

The document, in the Court's view, also circumvents the discovery order that I issued in this case on July 25th, 1989. In that discovery order I directed that discovery be scheduled specifically to begin on 10–27–89 and end on 11–10–89. I further specifically advised the parties that all discovery devices were to be initiated so that the responses would be filed within the period outlined for by the Court in the scheduling order. I also indicated that we would have all final contentions and other matters filed in 1989 with the understanding that this case would proceed to trial in January of 1990. I specifically cautioned counsel that I was not going to entertain schedule changes that would either delay the trial date or the dispositive motion dates in the case absent agreement by the parties. There was no agreement by plaintiff's counsel to allow defense counsel to file supplementary responses to the interrogatories three weeks after jury selection and on the eve of trial. The Court believes that it would clearly vitiate entirely the scheduling order in this case if counsel could withhold pertinent information and simply withhold it until after the jury selection in the case and prior to the eve of trial.

The Court does not need to make findings in this case regarding the subjective willfulness of defense counsel in this case. The Court can do this pursuant to Rule 16(f) and the broad discretion that the Tenth Circuit has given judges to ensure that cases are tried in a timely fashion and that the scheduling orders of the Court are not circumvented. Rule 16(f) incorporates all the remedial aspects of Rule 37 in terms of the action a court can take and here I just can't find any good cause whatsoever for the defense to file, after jury selection on the eve of trial, a document of this nature that specifically raises these points brought up under 51, 52 and 53. I recognize that some of the supplementations of the interrogatories were merely cumulative and those have been permitted. I recognize that other aspects of the interrogatories dealt with dates only and I have exercised the Court's discretion to permit the witnesses to testify to those dates although I have expressed reservations about the defense's inability to discover these documents earlier. These were, after all, the defense's own documents and there is no showing in the very lengthy filing made by the defense that these records of ARKLA couldn't have been found sooner.

Nevertheless, the Court believes that the specific proffered questions and answers under 51, 52, 53 and 54, as read previously, would circumvent and destroy the effectiveness of the Court's scheduling order in the case if it were permitted to go forward. The previous rules regarding sanctions allowed for the type of subjective inquiry that the defendant makes note of in their briefs as to whether or not the specific attorneys had the willful and malicious intent to destroy the proceedings. I don't need to make those findings in this case because the amendments to the rules in 1983 eliminated what was previously called the "pure heart but empty head defense." Having a pure heart but an empty head is no longer a defense. In this case, objectively, these documents should and could have been found sooner and this information, if it was going to be offered at trial, should have been forthcoming sooner. I make that finding primarily based on the

prejudice in this case. The specific prejudice to the plaintiff in this case is apparent. This involves a conversation between Medlin and Goresen. The substance of the conversation is disputed by Goresen. It was not disclosed in the deposition. It could place Goresen in a position of having to testify in this case and it is not supported by the previous discovery. Apparently there were general references to communications between Goresen, general references to communications between counsel but the portion shown to me by Mr. Goresen clearly shows that as of the date of the deposition the witness Medlin was specifically asked: "Do you remember having any communications with Pat Carmack or any representative of Royalty Petroleum subsequent to August 19th, 1987?"

A. "No, I don't specifically remember that. It may be that there is something in my file that would trigger my memory, Tom, but right now the date doesn't help me."

That's at page 22. Well, the notion that you can discover this triggering information the night before trial which would cause plaintiff's counsel to be in the position to either have to testify in this case or to withdraw and then to disclose it at that time without any showing of reasonable diligence that it couldn't have been disclosed sooner is simply something that I can't put my stamp of approval on. I will not put my stamp of approval on that.

The statements by counsel previously were that these items were discovered within the last few weeks. This information and specifically the substance of this information should have been communicated not only to counsel but to the Court. It was not. Indeed, much of this was forthcoming just in the last couple of days.

The Court also on its own is going to exclude this evidence under Rule 403 of the Federal Rules of Evidence. Rule 403 of the Federal Rules of Evidence provides as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

The defense in this case says that this information is in the documents that they supplied me previously. They designated the pages for me to read and I haven't found it. I don't believe the specific proffer that I've been provided here is in the pages that have been cited by defense counsel. I'm going to assume, however, that it is in there and it is in there verbatim. Even making those assumptions, this evidence is not admissible under Rule 403 of the Federal Rules of Evidence because I find that even though the proffered answers are relevant, the evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. In this case the prejudice is upon plaintiff's counsel's inability to meet those allegations, and specifically, the allegations that Medlin had a one-on-one or face-to-face or telephonic conversation with Mr. Goresen which was disclosed in this proffer for the first time following her deposition which Mr. Goresen flatly denies. The Court also notes that this testimony is cumulative to the gist or thrust of the other testimony offered by the defense in this case, namely, that there was communication to representatives of the plaintiff of its position.

So, separate and apart from any potential sanctions under Rule 26(g) and Rule 16(f), the Court makes an independent finding that the evidence is not admissible under Rule 403. In the Tenth Circuit such rulings are only the subject of reversible error if they constitute an abuse of discretion. In this case I have carefully weighed the probative value versus the prejudicial effect and made my finding that the evidence should be excluded.

I further indicate, as I did previously, that there has been no showing of reasonable diligence associated with the discovery of this documentation. There has been no adequate justification for the filing of this supplementation of the interrogatory response after jury selection and on the eve

of trial and for those reasons the evidence will be excluded.

Now, Mr. Goresen, if you would please take the stand. I'm going to ask you some questions about the time you spent involved in this and your hourly rate because I'm going to require Ms. Baird to justify why she should not reimburse you for your expenses associated with this controversy. Please raise your right hand.

(WITNESS SWORN.)

## THOMAS P. GORESEN

being first duly sworn to testify the truth, the whole truth, and nothing but the truth, testified as follows:

## EXAMINATION BY THE COURT

By Judge PHILLIPS:

Q. Mr. Goresen, you prepared a motion initially designed or requesting that this evidence be excluded. How much time did you spend on that?

A. Your Honor, that was mainly, to be honest with you, prepared by an associate with our office, Mr. Greg Pilcher, and I primarily reviewed and went over it with him and did help on the research.

Q. Let me ask you: How much time did you personally spend on it?

A. I believe I received it Wednesday night. I know we left about 10:00. Probably two, two-and-a-half hours.

Q. And how much time did your associate spend on it?

A. I believe he spent four hours on it.

Q. All right. What is your associate's billing rate?

A. I believe it's $80 an hour.

Q. What is your normal billing rate?

A. I believe in this case $115.

Q. All right. And then you also provided me the highlighted copy that I requested during the proceedings in this case. How long did it take you to put that together?

A. Again, my associate helped me on that, Mr. Greg Pilcher, at $80 an hour. I was in

trial at the time. I'm going to assume he spent about an hour on it.

Q. All right. And then would it be fair to say we spent at least a couple of hours in court discussing the controversy?

A. Yes, Your Honor.

THE COURT: All right. Now, I will permit inquiry by defense counsel at this point of Mr. Goresen only concerning the amount of time that was spent by he or his associate and the reasonableness of that time.

## CROSS-EXAMINATION

BY MS. BAIRD:

Q. Mr. Goresen, do you keep time records?

A. Yes, I do.

Q. Do you have them for this case?

A. In this case, yes, I do.

Q. Of the time that you have testified that you spent preparing the response, how much of that time is allocable to the areas covered by Ms. Kay Medlin's August '87 conversation and how much as attributable to the other areas which you have previously admitted did not change substantively and/or you've stipulated we could now testify to?

A. Most of the research and writing related to all of it. On the exclusion of the evidence, I don't know, probably an hour spent to the other stuff. I don't know.

Q. What percentage of the paperwork that you filed in your motion for default dealt with Ms. Kay Medlin's conversations with you?

THE COURT: You mean what portion separate and apart from the legal—

MS. BAIRD: Separate and apart from the other issues. Yes, Your Honor.

THE COURT: Well, you and I said two different things. I said, "separate and apart from the general legal discussion."

Q. (By Ms. Baird) How about both?

A. I believe most of it was the legal discussion and then there was a paragraph or a page in there listing the different—what

we believed to be the testimony that was different—

Q. Can you give me—

A. —but I believe I testified four hours was used preparing it of Mr. Pilcher. I wasn't—I was in the office. An hour. I don't know to be honest with you.

Q. You can't give me any estimate at all of what amount of that time was spent on areas that you have now stipulated to or that you have agreed were not a change—

A. Well, I think the brief—

Q. —from a previous response?

A. I believe the brief will reflect that mainly it's presentation of legal argument as opposed to the differing deals. There is one page listing the separation of the differences in the two interrogatories is my recollect of it.

Q. Did you, yourself, compare the supplemental interrogatory to the original interrogatory response?

A. I did. I also did at the direction of the Court. Mr. Pilcher was here prior to the testimony and went back and then I had a phone call to him to do it and at the lunch hour I reviewed it the best I could.

Q. How much of the time that you have testified you spent was spent in correcting what you had marked as—which really was not—for example, Mr. Altenbaumer's testimony which you later admitted was not new and that you did not need to spend any time on?

A. I probably reviewed Mr. Pilcher's highlighting at that point. I freely acknowledged it with you probably at counsel's table for two minutes, three minutes.

MR. HAGEDORN: May I approach counsel a moment?

THE COURT: Yes.

Q. (By Ms. Baird) Isn't it true that most of your legal research went to Rule 37 that was contained in your brief?

A. That is correct. We had one night to research it.

Q. And not to the rules that this Court has referenced in its ruling today?

A. I believe and I'm positive we did cite specifically Rule 26(g), that it was not signed and not only was it not signed, it was not sworn to or verified by a person or representative of ARKLA. We did not address Rule 403 and I don't believe Rule 16(f).

Q. How much of your research time that you have testified to was allocable to your research on Rule 37 which this Court has found inapplicable?

A. Probably most of it. Probably was a little bit of time spent on Rule 26(g).

MS. BAIRD: May I approach the counsel table, Your Honor?

THE COURT: Yes.

MS. BAIRD: Nothing further.

THE COURT: All right. Thank you, you may step down.

All right. I'm going to require counsel, Amy Baird, within seven days, to show cause why she should not be personally sanctioned pursuant to Rule 16(f) of the Federal Rules of Civil Procedure for the items that I have outlined here today. Specifically, the items that are the subject of this evidentiary proclusion order. I will also give her an opportunity at that time to file objections to the testimony of Mr. Goresen. The Court is strongly inclined in this case to reimburse Mr. Goresen for a portion of his expenses. I think some reduction is necessary and I was prepared to make such reduction. You should also indicate to the Court why you should not be sanctioned for failing to comply with Rule 26 of the Federal Rules of Civil Procedure by having that document signed. Frankly, you should be ashamed of yourself for filing a document in federal court that is not in compliance with the rules. It's neither sworn to, it's not signed by any attorney, it has no legal significance whatsoever and we have spent three days wasting our time over it. It is simply insufficient in this Court's view for you to say, "I'm sorry. I was in a hurry. I couldn't sign it." That excuse is not an excuse. That will be part of the order as well.

Finally, the Court will consider in this case the amount of time that I have had to

spend considering this matter. I have indicated previously that this case has been a sad commentary involving the bickering between counsel and the kind of issues that have had to be litigated. The current estimates are that it takes about $600 per hour to operate a federal court with all its staff and I figure I have spent at least four or five hours over the weekend and in recent days messing with this problem which most attorneys who appear before this Court would have had worked out. We have had a significant sideshow associated with this and I'm not going to permit this testimony. While I will probably reduce to some degree the amount of time that I have spent associated with it, I want counsel to be on notice when she files her show-cause document next week that the Court may require her to pay a sanction to the court clerk personally for as much as up to five hours of the Court's time associated with this due to hardship worked on the Court and the unnecessary and needless litigation that this gave rise to as a result of the filing that was in violation of Rule 26.

I'm taking the matter under advisement until then. The only action that I'm taking at this point in time is to make the evidentiary ruling pursuant to Rule 403 of the Federal Rules of Evidence and pursuant to Rule 16(f) of the Federal Rules of Civil Procedure that those items will not be received. That is an evidentiary proclusion sanction under Rule 16(f) and it is an evidentiary ruling pursuant to Rule 403. Under the Court of Appeals' decisions it falls within the district court's very broad discretion and under the Tenth Circuit rules, the Court's decision regarding exclusion of the evidence falls within the abuse of discretion standard of review concerning evidentiary rulings by the district court.

So, I will expect that document, Ms. Baird, to be personally prepared and signed by you next week and, at which time, Mr. Goresen, I will give you an opportunity to respond and then the Court will enter a written sanction order in this case at some further time which will set forth, in detail, for appellate review, the circumstances surrounding this matter.

All right. Now, I'm going to talk with counsel about the merits in the case which is something we haven't dealt with for a while because of all these sideshows that we have been dealing with.

Finally, I think I should advise you, Ms. Baird, that under the rules of the Tenth Circuit pertaining to sanctions under Rule 16(f), you are entitled to claim that it was your client's fault as well as yours that this controversy came about and if you choose to do so, you should do that in your filing. That would require the client to be jointly and severely liable for the sanctions that I impose. You're free to assert that if you choose. That's pursuant to the case of *In re Baker* in the Tenth Circuit, an en banc decision, which says if the sanctions are the fault of counsel, the sanctions should be imposed on counsel and if sanctions are the fault of the client, then sanctions should be imposed on the client. If you do assert that it is the client's fault and not yours, for the filing of this documentation, then I will permit the client to make a separate submission represented by additional counsel in opposition to that if they choose. If there is any such opposition by the client that will be due within seven days after you have filed your document.

\* \* \*

(EXCERPT OF
PROCEEDINGS—JANUARY
30, 1990)

\* \* \*

THE COURT: Be seated.

We have some remaining matters in this case. First of all, I'm going to order that the verdict form be filed of record in the case. The Court will also direct that the special interrogatories be filed of record in the case. I will invite counsel to come forward and examine them at this time if they desire.

Any further record to be made at this time on behalf of the plaintiff or the defendant?

MR. GORESEN: None on behalf of the defendant.

MR. HAGEDORN: None on behalf of me, Your Honor, or my client.

THE COURT: All right. The first matter I wanted to take up is the matter concerning the representations by the defense witnesses that the tap that still remains in controversy on the AER line would be installed was the subject of an agreement. I would like to have a written report filed with the Court on the status of that every 30 days and I would like to have it signed by both counsel in the case, lead counsel in the case who tried the case, Mr. Goresen and Mr. Hagedorn. If you would please advise me of that by the 10th of every month. The Court wants to monitor that in light of the previous hearing we held in this matter and in light of some of the rulings I made based on the representations of counsel.

The second matter I want to take up is the remaining matter with respect to sanctions in this case. I want to advise counsel that I'm in the process right now of writing the order that confirms the proclusionary sanctions that I entered in this case pursuant to Rule 16(f) and pursuant to Rule 403 of the Federal Rules of Evidence and the inherent supervisory powers of the Court. It's my recollection that I gave Ms. Amy Baird one week from yesterday, which would be Thursday—pardon me. I believe I gave her one week—would that be—were you planning on filing this, Ms. Baird, on February 5th?

MS. BAIRD: That's correct, Your Honor.

THE COURT: All right. Then on February 5th, that's Monday, I will expect from Ms. Baird the following documentation. I want to go over it because we were moving kind of swiftly yesterday. Under the law of the Tenth Circuit, the Court has to make a decision under Rule 16(f) whether or not expenses will be imposed in addition to the preclusionary sanctions that I have already entered. I have indicated previously that based on the record that has been placed before me at this time, that I'm inclined to award expenses in some degree although there will be some reduction of the time

sought by plaintiff's counsel given the fact that some of the arguments were wide of the mark. The specific concern of the Court is this language in Rule 16(f) which reads as follows: "In lieu of, or in addition, any other sanction the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule including attorney fees unless the judge finds the noncompliance was substantially justified or that other circumstances make an award of expenses unjust."

All right. That's the focus of the remaining portion of the sanction proceeding in this case concerning Ms. Baird and her filing of the supplemental interrogatory response and the proffer that grew out of that, specifically questions 51, 52 and 53 which the Court excluded pursuant to Rule 16(f), Rule 403 and the supervisory powers of the Court. The Court will expect on February 5th a filing by Ms. Baird as to why—pardon me, in the form of a show cause submission as to why she should not be required to pay the reasonable expenses incurred because of noncompliance with the rule. Again, the Court's concern here is that the filing of the interrogatory responses almost three months after discovery closed, two weeks after jury selection was completed and the night before the trial began which set forth an alleged conversation between Mr. Goresen and Ms. Medlin that was not the subject of the previous interrogatory responses and it was not disclosed in the deposition. It frustrated the Court's scheduling order in this case which set discovery cutoff for November 1, 1989 and required discovery responses to be filed prior to that date.

So that's the first issue that I'm going to permit Ms. Baird to respond to.

The second issue I wanted her to respond to is why sanctions in some form should not be imposed for her and her firm's failure to comply with Rule 26. In this case I'm focusing on Rule 26(g) which reads as follows: "Every request for discovery or response or objection thereto made by a party represented by an attorney shall be

signed by at least one attorney of record in the attorney's individual name whose address shall be stated. A party who is not represented by an attorney shall sign the request, response or objection and state the party's address. The signature of the attorney or party constitutes a certification that the signor has read the request, response or objection and that to the best of the signor's knowledge, information and belief formed after a reasonable inquiry, it is consistent with these rules and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, that it's not interposed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation. It's not unreasonable or unduly burdensome or expensive given the needs of the case, the discovery already had in the case in the amount in controversy."

Specifically, the Court believes that there has been a conceded violation of Rule 26 because, as I recall the record yesterday, this document was not signed by anyone associated with Ms. Baird's firm. I have not yet heard Ms. Baird say she was responsible for preparing it but I did hear her say that her firm was responsible for preparing it and mailing it and it is apparent from the face of the document that it was not signed by anyone. Also, despite the fact that it's an interrogatory response, it is not sworn to by any individual and was simply served on plaintiff's counsel on January 24th which, I think the record will reflect, is the afternoon before we began the trial of this case. That's the second aspect I will expect a show-cause submission from Ms. Baird on.

I will advise Ms. Baird, in fairness, that in addition to the time that I am considering imposing expenses on associated with Mr. Goresen which, as I indicated, will be reduced in some reasonable fashion by the Court in its discretion given the fact that some of the arguments were wide of the mark, I'm also considering imposing a sanction pursuant to Rule 16(f) such as that imposed by some of the recent orders of

Tenth Circuit based on the hardship imposed on the Court having to deal with this issue filed on the eve of trial and placing plaintiff's counsel in the position of having to face the quandary of either withdrawing or testifying as a witness in order to rebut the allegations contained in the proffer made by the witness Medlin.

Let me advise counsel that in this case it is my view, at least at this point in the litigation, that the fact that Mr. Goresen moved for sanctions under Rule 37 initially is not dispositive of his request for fees because in reviewing his motion, he specifically discussed the scheduling order in this case and the frustration an circumvention that this filing would cause and the scheduling order in this case forms the basis for the Rule 16(f) sanction. That was specifically referenced by Mr. Goresen at pages 7 and 8 of his filing and the Court can understand that Mr. Goresen might be wide of the mark having to prepare this between ten o'clock and midnight on the night before trial started. I'm not going to be unduly hypertechnical with respect to my analysis of Mr. Goresen's request for preclusionary sanctions or his request for fees but on the other hand I think that some reduction will be appropriate.

Likewise, I'm going to take into consideration in this case the fact that we had to take a substantial amount of time out from the merits of this lawsuit diverting our inquiry into numerous discovery disputes. Particularly with respect to the positions taken by the defendant in this case that Mr. Goresen and his client should not be permitted to raise anything during their case in chief that was not something that surfaced during the discovery cutoff period. It seems to me that—it seems to me, at least at this stage, that there is going to have to be a showing by Ms. Baird as to why the Court should not enforce those rules on both sides of the lawsuit.

The only issue left regarding sanctions is an order—pardon me—a submission by Ms. Baird pursuant to Rule 16(f) and pursuant to Rule 26(g) as to why sanctions should not be imposed upon her personally under those rules. Again, under the Tenth Cir-

cuit's recent sanction decisions, and I might simply refer the Court to one that I was involved in when I sat on the Tenth Circuit involving the Ocelot—that's O-c-e-l-o-t—Oil Corporation case. There is also the question of whether or not the sanctions are imposed personally on Ms. Baird or if she claims that the client was responsible for this as well. There is always the possibility here that the client was responsible although there has been no showing at this stage of a reasonable diligence with respect to these documents that surfaced. There was simply a conclusory allegation that they recently appeared and they were turned over as soon as possible. The law of the Tenth Circuit says that if the fault is counsel's, then counsel shall bear the expenses and if the fault is the client's, then the client shall bear the expenses. That's set forth in the case of *In re Baker* interpreting Rule 16(f) which is an en banc Tenth Circuit decision.

In this case the Court is prepared to hear from Ms. Baird as to whether or not she or the client should bear the expenses assuming the Court finds expenses to be warranted under either 16(f) or under the 26(g) provision. As I indicated yesterday it seems to me that the 26(g) violation may not give rise to monetary sanctions despite the fact that it may have been filed for the purposes of causing unnecessary delay or needless increase in the cost of litigation because it was not signed in conformity with the rule and the rule does require that if a request, response or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party making the request, response or objection. As I understand it, there has still been no signing of the response to date; is that correct?

MS. BAIRD: That is correct, Your Honor.

THE COURT: All right. Then those are the matters that will be the subject of the filing to be made next Monday and I will then ask for an expedited response by Mr. Goresen.

Mr. Goresen, I previously indicated you would have seven days to respond but because I'm well into the drafting of this order at this point, the unresolved portions of which involve whether sanctions will be imposed personally against counsel or against counsel and the client in the form of expenses, I want you to respond, if you desire, on the 8th. I will have an order out very shortly after that.

I would also like Mr. Goresen, as the prevailing party in this case, to prepare a judgment consistent with the verdict of the jury in this case. Have it approved as to form only by Mr. Hagedorn and have it on file by February 5th, 1990.

All right. Are there any other further items to be taken up at this time? On behalf of the plaintiff?

MR. GORESEN: No, Your Honor.

THE COURT: On behalf of the defendant?

MR. HAGEDORN: No, Your Honor.

THE COURT: We're in recess.

Pardon me. I did neglect to mention one thing. Mr. Goresen, you're also to prepare a proposed order indicating that every 30 days, until the tap in question is installed, there will be a report, a status report, filed with this Court by both counsel indicating the status of those negotions and progress. That will be signed by both counsel and be on file by the 10th of each month. If you will make that a separate order and have it approved as to form only by Mr. Hagedorn.

Thank you.

(PROCEEDINGS CLOSED.)

> A True and Correct Transcript
> Certified: /s/ T. Gregory Bloxom
> T. Gregory Bloxom
> United States Court Reporter
> Western District of Oklahoma

## EXHIBIT C

### ORDER REGARDING STATUS/SCHEDULING CONFERENCE

Filed July 25, 1989

This matter came before the Court for purposes of a Status/Scheduling Confer-

ence on the 25 day of July, 1989. Appearing for the plaintiff(s) at said conference was ___ Thomas Goresen ___

Appearing for the defendant(s) at said conference was ___ Frank Hagedorn; James Proszek ___.
The following deadlines were set by the Court at the conference:

## MOTIONS TO JOIN OR AMEND

1. Motions to join additional parties or to amend pleadings shall be filed by 8-21-89 .

## DISCOVERY CUT–OFF

2. The discovery cutoff date in this matter is 10-27-89 . Plaintiff's final contentions are to be filed with the Court by 11-10-89 . Defendant's final contentions are to be filed with the Court within ten (10) days thereafter.

All discovery devices, such as requests for admissions or interrogatories, must be initiated in sufficient time prior to the discovery cutoff date so that the responses will be due prior to discovery cutoff. Discovery requests by either party which would require responses outside the discovery cutoff period must be approved in advance by the Court upon a showing of compelling circumstances.

The parties may, however, conduct any form of discovery outside the time limitations of this paragraph without Court approval if (1) such discovery is agreed upon by the parties and (2) such discovery will not impact the trial date or dispositive motion deadline dates set forth below.

## WITNESS LISTS

3. By 9-29-89 , the plaintiff(s) shall submit to the defendant(s) its final list of witnesses in chief, together with addresses and a brief summary of expected testimony where the witness has not already been deposed. If the witness has been deposed, no summary is necessary.

4. By 10-6-89 , the defendant(s) shall submit to the plaintiff(s) its final list of witnesses in chief, together with addresses and a brief summary of expected testimony where the witness has not already been deposed.

5. The exchange of witnesses required by paragraphs 3 and 4 shall be by letter, with a copy of said letter to be submitted to the Clerk of this Court for filing. Except by leave of Court and exceptional circumstances shown, no witness shall be permitted to testify for any party unless such witness's name was listed in the letter of transmittal.

## EXPERT WITNESSES

6. With regard to each expert witness, the identity and area of expertise must be made known; and the expert's curriculum vitae must be filed with the Clerk of the Court as part of the letter of transmittal referenced in paragraph 5. The curricula vitae filed with the Clerk shall be in written form suitable for introduction into evidence as an exhibit at trial. Moreover, the expert must be made available for deposition examination during the discovery period unless waived, in writing, by opposing counsel. The deposition of each expert shall be taken in sufficient time to allow the testimony to be concluded within the discovery period. Additionally, at least two (2) days prior to the scheduled deposition of the expert, the party who is sponsoring the expert as its witness will provide opposing counsel with (1) an identification and description of the specific areas or fields in which the witness will be tendered as an expert, and (2) a separate listing and brief summary of each opinion to be rendered by the expert during the expert's direct examination at trial. Upon failure to accomplish the above, the expert will not be permitted to testify absent exceptional circumstances. If an expert's deposition testimony is to be

offered in video form at trial, no more than five (5) minutes of the presentation of the direct examination will be devoted to the issue of the expert's qualifications.

### EXHIBIT LISTS

7. By 10–13–89 , the plaintiff(s) shall provide defendant(s) its final exhibit list, containing the proposed number and a brief description of each exhibit which is intended to be offered. The list shall be in conformity with the format set forth in Appendix III of the Local Rules. By 10–20–89 , the defendant shall provide plaintiff its final exhibit list in the same fashion. Absent compelling reasons, exhibits which have not been provided pursuant to this paragraph will not be received at trial. All exhibits which are the subject of the above referenced exhibit lists and which are intended to be offered into evidence shall be premarked and reviewed by the parties at least ten (10) days prior to the commencement of the trial. The Clerk will supply gummed labels for this. No trial time will be used for the marking of exhibits.

### DISPOSITIVE MOTIONS

8. All dispositive motions shall be filed by the parties by 11–10–89 . Responses to said motions shall be filed by 11–24–89 , and the replies to said responses, if permitted by the Court upon application, shall be filed by 12–1–89 .

### SETTLEMENT

9. Plaintiff's counsel is directed to initiate settlement discussions with the defendant(s) on or before 10–13–89 and report the status of such discussions to the Court by letter no later than 12–8–89 . A Settlement Conference in this matter shall be held before a United States Magistrate at a date to be set by the Magistrate after coordination with the parties and the Clerk's Office, but no later than 1–1–90 .

### TRIAL DATE

10. The trial date for this matter shall be set for the 1–8–90 trial docket. The case will be tried to a jury. A jury demand has been made by plaintiff .

### FINAL PRE–TRIAL FILINGS

11. On 1–2–90 , one week prior to the trial of this matter, the parties shall file suggested voir dire, requested jury instructions, motions in limine, and, if desired, trial briefs. Any objections (optional) to the above referenced trial submissions shall be filed five (5) days thereafter. In non-jury matters, proposed findings of fact and conclusions of law are to be submitted no later than 1–2–90 .

12. By 1–2–90 , a final pretrial order approved by all counsel in conformity with Local Rule 17(b) and the format set forth in Appendix IV of the Local Rules of this district, shall be submitted to the Court. The parties in particular are directed to page iii of Appendix IV with regard to the specification of all objections to proposed exhibits, with said specifications containing the evidentiary rule or rules relied upon. Exhibits which are not objected to in the final pretrial order shall be deemed admitted at trial without the necessity of a further evidentiary foundation or hearing.

### EXTENSIONS OF TIME

13. The Court also advised counsel that it will not favor motions to alter the schedule set forth above, with the exception of proposed schedule changes which (1) are agreed upon by the parties, and (2) which will not alter the trial date or dispositive motion deadline date. Any motion to alter the schedule set forth in this order which does not meet both of the requirements set forth in this paragraph must be accompanied by a strong showing setting forth in detail the compelling circumstances justifying the proposed schedule changes.

14. The parties were also advised that motions which are not responded to within

the specified period of time "shall be deemed confessed." See Local Rule 14(A) of the Western District of Oklahoma. Failure to comply with the deadlines set forth in this order will also result in the imposition of sanctions. See Fed.R.Civ.P. 11, 16(f), 26(g) and 37.

Counsel were provided a copy of General Order To Attorneys Appearing Before Judge Layn R. Phillips, Court Exhibit # 1.

15. Other: _____

_____

_____

Time Started: _____

Time Ended: _____

BY ORDER OF THE COURT.

_____
/s/ Layn R. Phillips

LAYN R. PHILLIPS
United States District Judge

Counsel Appearing for Plaintiff(s)

Counsel Appearing for Defendant(s)

/s/ Thomas P. Goresen _____

_____ _____

_____ _____