OCELOT OIL CORPORATION, et al.,
Plaintiffs–Appellants,

v.

SPARROW INDUSTRIES, et al.,
Defendants–Appellees.

No. 85–2883.

United States Court of Appeals,
Tenth Circuit.

May 31, 1988.

---

Thomas J. Kimmell· (John M. Cogswell, with him on the brief), of Cogswell and Wehrle, Denver, Colo., for plaintiffs-appellants.

Robert B. Sullivan (Steven C. Willman, with him on the brief), of Shughart, Thomson & Kilroy, P.C., Overland Park, Kan., for defendants-appellees.

Before SEYMOUR and MOORE, Circuit Judges, and PHILLIPS,[*] District Judge.

SEYMOUR, Circuit Judge.

Plaintiffs Ocelot Oil Corporation and Oil Resources, Inc. (Ocelot) appeal from a district court decision overruling objections to a magistrate's order that struck Ocelot's pleadings as to defendants Bonnie Brown and Larry Brown and imposed attorney's fees on Ocelot, as Rule 37 sanctions for abuse of the discovery process. We affirm as to the attorney's fees, but we reverse and remand as to the striking of the pleadings because the district court reviewed that portion of the magistrate's order under the wrong standard.

I.

This case stems from the sale in August 1980 of corporate stock and interests in oil and gas properties and leases. Ocelot was the buyer. In June 1983, Ocelot filed suit in several jurisdictions against the former owners of the properties and leases. In this case in Kansas federal court, Ocelot seeks $20,000,000 in damages on various grounds not material to this appeal. Bonnie and Larry Brown, the operators of a small oil and gas business, constitute one group of defendants. We limit our recital of the facts to those relevant to the Browns.

Discovery did not proceed smoothly. The magistrate below characterized Ocelot's conduct as "t[aking] a cavalier approach with regard to defendants' efforts to discover the particulars of the allegations of the Complaint and proceed[ing] to

---

* The Honorable Layn R. Phillips, United States District Judge, Western District of Oklahoma, sitting by designation.

thwart defense counsel's efforts to proceed with orderly discovery. This is particularly true with regard to the Browns and the efforts of their counsel to proceed with discovery." Rec., vol. I, Doc. # 207, Magistrate's Memorandum and Order at 6 (Nov. 23, 1984). In particular, the Browns attempted without success to depose the chief executive officer of Ocelot's parent company. Further, Ocelot failed for several months to inspect documents which the Browns made available to it in response to Ocelot's Request for Production of Documents. Although the record reflects other instances of similar breakdowns of orderly discovery, we discuss only these two in detail, in reverse order.

Ocelot served a Request for Production of Documents on the Browns on October 26, 1983. After initially informing Ocelot that the requested documents did not exist, the Browns determined that several of their files did come within the Request. In February 1984, they advised Ocelot of the documents' existence, and made them available on numerous occasions when Ocelot's counsel was scheduled to be in the area. Ocelot did not examine the documents until after the Browns' motion for sanctions had been heard and the magistrate had indicated he was likely to grant it.

In contrast, Ocelot refused to produce J. Verne Lyons, the chief executive officer of Ocelot's parent company, for deposition. Other defendants not involved in this appeal first attempted to depose Lyons in January 1984. In a previous deposition in a related case in Colorado, Lyons had described Larry Brown as the mastermind behind the transaction underlying this litigation and had given some details as to Larry Brown's conduct. Nevertheless, Ocelot's counsel orally objected to producing Lyons for the deposition noticed in January 1984, primarily on the grounds that Lyons had no personal knowledge of the facts in the allegations made in the complaint.

On March 2, Ocelot filed a motion for a Protective Order, asserting that Lyons' deposition had already been taken in the Colorado case. Although the other defendants in this Kansas suit were also parties to the Colorado suit, the Browns were not. Thus they did not have an opportunity to question Lyons at his previous deposition. Ocelot's motion did not bring this fact to the court's attention. The motion also admitted that Lyons did have personal knowledge of the facts in Ocelot's allegations covering most of the time period during which the Browns were involved in the transaction. On March 16, the court ordered Ocelot to produce Lyons for deposition.

In April 1984, the Browns noticed Lyons' deposition for May 13. They made clear in a letter to Ocelot that they would in no event agree to a continuance of that deposition. Four days before the deposition date, Ocelot again filed a motion for a Protective Order, this time in order to secure a postponement of Lyons' deposition. The basis for the motion was that on May 3, Ocelot had executed a written settlement agreement with a third-party defendant, and that settlement of the entire case was likely to take place shortly thereafter. In fact whatever agreement was reached on May 3 was only tentative; it was contingent on the third-party defendant reaching an independent settlement agreement with some of the non–Brown defendants in a case related to the instant one. Moreover, none of the fourteen defendants were party to the agreement, some of the defendants had extensive counter-claims and third-party claims, and most significantly, Ocelot had previously rejected the Browns' request to be dismissed from the suit. While Ocelot left open the possibility that it would dismiss the suit against the Browns if settlement negotiations proved successful, the Browns had warned that they would in all likelihood ask for attorney's fees if Ocelot rejected their request. Lyons did not appear for his deposition.

The Browns moved for sanctions against Ocelot. Oral argument on Ocelot's motion for a Protective Order and the Browns' motion for sanctions took place in June in front of a magistrate. The magistrate found that Ocelot had made its May 10 motion for a Protective Order in bad faith, that its earlier conduct with regard to its

motion of March 2 "smacks of bad faith, if not outright deceptiveness," that "delay, procrastination and complete disregard of the Browns being parties to this case" had marked Ocelot's conduct of discovery, that Ocelot had thwarted every attempt by the Browns to discover the details of their allegedly fraudulent conduct, and that the financial burden on the Browns of this slow-paced and obstacle-laden discovery was substantial. Rec., vol. I, Doc. # 207, Magistrate's Memorandum and Order at 6, 11, 15, 18–22. It further found that Ocelot had waived its right to a hearing on the amount of attorney's fees. *Id.* at 18. The magistrate denied Ocelot's motion for a Protective Order and granted the Browns' motion to strike Ocelot's pleadings as to them. It granted the Browns attorney's fees in the amount of $6,467.55.

Ocelot appealed to the District Court for the District of Kansas, which reviewed the magistrate's order under the clearly erroneous standard of review rather than *de novo*. The court adopted the magistrate's order in its entirety, after interpreting it as having stricken Ocelot's claims with prejudice. It is this decision which is now on appeal under 28 U.S.C. § 1291.

## II.

Ocelot contends that the district court reviewed the magistrate's order under the wrong standard, that the order is based in part on an *ex parte* communication between the Browns' counsel and the magistrate, that dismissal was too harsh a sanction, and that Ocelot was improperly denied a hearing on the amount of attorney's fees. The Browns contest these arguments, and argue that even if the district court was wrong as to the proper standard of review, the actual review conducted by the district court satisfies statutory and constitutional requirements.

### A. The District Court's Review of the Magistrate's Order Dismissing the Action as a Sanction

#### 1. The Standard of Review

Magistrates are appointed by and serve under the supervision of district court judges. 28 U.S.C. § 631(a) (1982 & West Supp.1987). The term of office of full-time magistrates is eight years, *id.* § 631(e), and their salary is protected by statute against reduction, *id.* § 634(b), rather than by the Constitution. They are thus not Article III judicial officers. The jurisdiction and powers of magistrates are governed by 28 U.S.C. § 636, and limited by the Constitution, U.S. Const. art. III, § 1.

28 U.S.C. § 636(b) establishes that magistrates may hear and determine any pretrial matters pending before the court, save for eight excepted motions.[1] These eight motions are generally referred to as "dispositive" motions. Magistrates may issue or-

---

1. Section 636(b) provides in relevant part:

   "(b)(1) Notwithstanding any provision of law to the contrary—

   (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, *except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.* A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

   (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommenda-

   tions for the disposition, by a judge of the court, of any motion excepted in subparagraph (A). . . .

   (C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

   Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions."

   (Emphasis added).

ders as to non-dispositive pretrial matters, and district courts review such orders under a "clearly erroneous or contrary to law" standard of review. 28 U.S.C. § 636(b)(1)(A). While magistrates may hear dispositive motions, they may only make proposed findings of fact and recommendations, and district courts must make *de novo* determinations as to those matters if a party objects to the magistrate's recommendations. *Id.* § 636(b)(1)(B), (C).

In this case, the magistrate's order struck plaintiff Ocelot's pleadings as to the Browns as a Rule 37 sanction for abuse of the discovery process. Discovery is clearly a pretrial matter, and magistrates thus have general authority to order discovery sanctions. They may not do so, however, if those sanctions fall within the eight dispositive motions excepted in subsection (A). The eighth of those motions is "a motion ... to involuntarily dismiss an action." *Id.* § 636(b)(1)(A).

█ The striking of Ocelot's pleadings with prejudice means that Ocelot can no longer sue the Browns. This sanction has the effect of dismissing Ocelot's action, contrary to Ocelot's wishes, and operates as res judicata. We conclude that the order constitutes the involuntary dismissal of Ocelot's action within section 636(b)(1)(A), and is thus beyond the power of a magistrate to order. *See Zises v. Department of Social Services,* 112 F.R.D. 223, 226 (E.D. N.Y.1986). The fact that the striking of the pleadings was ordered as a discovery sanction does not change its effect. *See* 7 J. Moore, Moore's Federal Practice

¶ 72.04[2.–4] at 72–51 (1987) ("Sanctions may be either dispositive or non-dispositive, and hence the treatment of them by the magistrate and the district judge varies with the severity of the penalty being considered.").

We find support for our reading of subsection (A) in Rule 72 of the Federal Rules of Civil Procedure. Rule 72 specifies the procedures to be used by magistrates with regard to pretrial matters.[2] The Rule reflects the division in section 636(b) between matters as to which magistrates may issue orders and matters as to which magistrates may make only proposed findings of fact and recommendations. Significantly, the Rule does not list the specific motions which fall into each category, but simply refers to matters as either "dispositive" or "not dispositive" of a claim or defense. Fed.R.Civ.P. 72. As to *any* dispositive matter, magistrate authority is limited and the district court must use the *de novo* standard of review. *Id.* 72(b). The notes to Rule 72 explicitly tie the two categories used in Rule 72 to referrals under either subsection (A) or subsection (B) of section 636. *See* Fed.R.Civ.P. 72 advisory committee note. Because Rule 72 became law subsequent to the relevant amendment to section 636, we read the notes as confirming our interpretation of the section: motions not designated on their face as one of those excepted in subsection (A) are nevertheless to be treated as such a motion when they have an identical effect. *See Zises,* 112 F.R.D. at 226.

2. Rule 72 provides:
"**(a) Nondispositive Matters.** A magistrate to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. The district judge to whom the case is assigned shall consider objections made by the parties, provided they are served and filed within 10 days after the entry of the order, and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law.
"**(b) Dispositive Motions and Prisoner Petitions.** A magistrate assigned without con-

sent of the parties to hear a pretrial matter dispositive of a claim or defense of a party ... shall promptly conduct such proceedings as are required.... The magistrate shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact when appropriate...."·
"... The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions."

This dispositive/non-dispositive distinction is foreshadowed by the legislative history of the amendment to section 636 that gave magistrates authority to hear the eight motions listed in subsection (A). The House Report, for instance, refers to the motions throughout as dispositive motions. H.R.Rep. No. 94–1609, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162.

Our interpretation is further confirmed by the requirement that we read section 636 so as to avoid constitutional problems, where such a reading is fairly possible. *See Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."). The Constitution requires that Article III judges exercise final decisionmaking authority. *See United States v. Raddatz,* 447 U.S. 667, 683, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980); *cf. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 62, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982) (plurality opinion) (judicial power of the United States must be vested in Article III courts). Dismissal with prejudice is undoubtedly a final decision with respect to the claims against the Browns. Section 636 may not be read to confer more power on magistrates than the Constitution permits.[3]

Finally, other courts have also recognized that motions other than those explicitly listed in subsection (A) are dispositive within the context of section 636, and have consequently limited magistrate authority to decide them. *See* 7 J. Moore, *supra,* ¶¶ 72.04[2.–4], [2.–6] (citing categories of dispositive motions and citing cases).

In short, then, we hold that the striking of pleadings with prejudice, whether as a discovery sanction or for some other reason, constitutes the involuntary dismissal of an action within the meaning of section 636(b)(1)(A). When Ocelot objected to the magistrate's order, the district court was required to make a *de novo* determination of the basis for the order.

### 2. The District Court's Actual Review of the Order

The Browns argue that the review actually carried out by the district court satisfies the *de novo* standard. *Raddatz* establishes what that standard requires:

"Congress focused on the potential for Art. III constraints in permitting a magistrate to make decisions on dispositive motions.... [I]n providing for a 'de novo determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations....

"....

"... [T]he magistrate acts subsidiary to and only in aid of the district court. Thereafter, the entire process takes place under the district court's total control and jurisdiction.

"....

"... [T]hat delegation does not violate Art. III so long as the ultimate decision is made by the district court."

*Raddatz,* 447 U.S. at 676, 681, 683, 100 S.Ct. at 2412, 2415, 2416.

The Browns quote a portion of the district court's Memorandum and Order as evidence that the court made the "ultimate adjudicatory determination":

"The Court has laboriously poured over the massive stack of briefs and exhibits that the parties have generated concerning this motion. The Court is convinced that on the record before it the sanction of striking the plaintiffs' claims as to the

---

**3.** The Browns rely on *Devore & Sons, Inc. v. Aurora Pacific Cattle Co.,* 560 F.Supp. 236, 238–39 (D.Kan.1983), for the proposition that magistrate authority to resort to the sanction of dismissal is vital to their ability to manage discovery. We note that district courts are in disagreement on this point. *Compare Singh v. Superintending School Committee,* 593 F.Supp. 1315, 1318 (D.Me.1984) *and Devore,* 560 F.Supp. at 239 *with Zises,* 112 F.R.D. 226 *and Donovan v. Gingerbread House, Inc.,* 106 F.R.D. 57, 58–59 (D.Colo.1985).

Browns is entirely appropriate in light of the repeated abusive conduct by the plaintiffs towards the Browns."
Rec., vol. I, Doc. # 236, Memorandum and Order at 3 (Feb. 22, 1985). The Browns claim further that a remand to the district court would serve no purpose, as "the judge would only be required to do that which he has already done." Brief of Appellees at 18.

As we are well aware, however, the difference between a *de novo* review of a record and a review under the clearly erroneous standard is significant. In order to conduct a *de novo* review a court "should make an independent determination of the issues ...; [it] 'is not to give any special weight to the [prior] determination'...." *United States v. First City Nat. Bank,* 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed. 2d 151 (1967). "The district judge is free to follow [a magistrate's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976). The clearly erroneous standard, on the other hand, requires that the reviewing court affirm unless it "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ In this case, it is clear that the district court accorded considerable deference to the magistrate's order. The court stated that "this Court will refuse to substitute its judgment on the best manner in which to manage the discovery in this case for Magistrate Wooley's.... [A]ny reasonable measures thought by him to be necessary and appropriate shall not be overruled by this Court." Rec., vol. I, Doc. # 236, Memorandum and Order at 4 (Feb. 22, 1985). Moreover, the portion of the district court's Memorandum and Order quoted to us by the Browns follows immediately after the court's statement of the *United States Gypsum Co.* clearly erroneous standard. *Id.* at 3. Although we realize that the district court has already re-

viewed the record thoroughly, we believe that it has done so constrained by the assumption that the magistrate's order must be affirmed absent clear error.

In sum, while the district court is free, on remand, to place whatever reliance on the magistrate's recommendation its merit justifies, the court must review the record in light of its own independent judgment.

### 3. The Propriety of Dismissal as a Sanction

As we have recently had occasion to reiterate, dismissal with prejudice is a drastic sanction, *see Meade v. Grubbs,* 841 F.2d 1512, 1520 & n. 6 (10th Cir.1988); *M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 872 (10th Cir.1987); *Smith v. United States,* 834 F.2d 166, 171 (10th Cir.1987), and one that must be grounded in some fault on the part of or binding upon the party, *M.E.N. Co.,* 834 F.2d 869 (remanding where parties argued they were not personally at fault); *Smith,* 834 F.2d 166 (holding client bound by lawyer's trial strategy).

Consequently, we have upheld dismissals and defaults where the parties themselves neglected their cases or refused to obey court orders, *see, e.g., Sheftelman v. Standard Metals Corp.,* 839 F.2d 1383, 1387 (10th Cir.1987) (opinion on rehearing); *Gates v. United States,* 752 F.2d 516 (10th Cir.1985); *Mertsching v. United States,* 704 F.2d 505 (10th Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370 (10th Cir.), *cert. denied,* 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978), or where counsel engaged in deliberately dilatory tactics or other trial strategy intended to inure to the benefit of the client, *see Smith,* 834 F.2d 166; *Norman v. Young,* 422 F.2d 470 (10th Cir.1970); *see also National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781 (dismissal warranted in light of counsel's bad faith and "callous disregard" of duties); *Link v. Wabash R.R.,* 370 U.S. 626, 630–33, 82 S.Ct. 1386, 1388–90, 8 L.Ed.2d 734 (1962) (dismissal appropriate where there is reasonable inference of deliberately dilatory conduct). We have reversed dismissals and defaults,

or remanded for more specific findings on the parties' responsibility, where inadvertence or simple neglect were the basis of the court's decision. In such cases, the deterrent effect of a default or dismissal is likely to be substantially achieved through lesser sanctions. We have therefore been reluctant to affirm on the basis of isolated instances of noncompliance or where the district court's findings did not make specific reference to fault by the parties or intentional conduct by their attorneys, and did not explain why lesser sanctions would be ineffective. *See, e.g., M.E.N. Co.,* 834 F.2d 869; *Woodmore v. Git-N-Go,* 790 F.2d 1497 (10th Cir.1986); *Hollis v. United States,* 744 F.2d 1430 (10th Cir.1984); *cf. Taylor v. Illinois,* —— U.S. ——, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (approving refusal to permit witness to testify in criminal case as sanction for willful delay designed to gain tactical advantage); *Braley v. Campbell,* 832 F.2d 1504 (10th Cir.1987) (en banc) (court may impose sanctions on attorney for frivolous, multiplicious, or vexation litigation); *In re Sanction of Baker,* 744 F.2d 1438 (10th Cir.1984) (en banc) (affirming imposition of fine on attorneys for pattern of negligence), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985).

█ We recognize, however, that it is not always easy to determine whether a course of conduct is the result of mere inattention by counsel or is a matter of strategy on their part. Under the rule laid down in *In re Sanction of Baker,* 744 F.2d 1438, which requires that the impact of the sanction be lodged where the fault lies, *id.* at 1442, a number of factors should be considered by the district courts in making their findings on the issue of fault. Those factors include "(1) the degree of actual prejudice to the defendant ...; (2) the amount of interference with the judicial process ...; and (3) the culpability of the litigant." *Meade,* 841 F.2d at 1520 n. 7; *see also Hollis,* 744 F.2d at 1433; *Joplin v. Southwestern Bell Tel. Co.,* 671 F.2d 1274, 1276 (10th Cir.1982) (per curiam); *cf.*

*Brinkman v. Dallas County Deputy Sheriff Abner,* 813 F.2d 744, 749 (5th Cir.1987) (listing factors to be considered before ordering default or dismissal); *Shea v. Donohoe Constr. Co.,* 795 F.2d 1071, 1074–79 (D.C.Cir.1986) (same); *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868–70 (3d Cir.1984) (same). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits ..., is dismissal an appropriate sanction." *Meade,* 841 F.2d at 1520 n. 7.

On remand, the district court should make its independent review in light of these considerations. If it decides that dismissal is the appropriate sanction, it should disclose its reasoning in support of the selection of this particularly drastic penalty. We therefore remand on this issue.[4]

**B. The District Court's Review of the Order Granting Attorney's Fees as a Sanction**

1. Standard of Review

█ Ocelot also challenges the imposition of attorney's fees as a sanction. The merits of this issue are properly before us because magistrates have the authority to impose such fees as non-dispositive discovery sanctions under 28 U.S.C. § 636, and the standard of clearly erroneous or contrary to law used by the district court to review those fees was therefore appropriate. *See* 7 J. Moore, *supra,* ¶ 72.04[2.–4] at 72–52 (where Rule 37(b) motion seeks variety of sanctions, magistrate may grant nondispositive fee aspect and recommend treatment of dispositive sanction requested).

2. The Need for a Hearing on Amount of Attorney's Fees

█ Ocelot's challenge to the award of fees is limited to an assertion that due process required the magistrate to afford Ocelot a separate hearing on the amount of fees. Although due process requires fair notice and an opportunity to be heard be-

---

4. Our resolution of this issue makes it unnecessary for us to address Ocelot's contention that the magistrate's order of dismissal is tainted by an *ex parte* communication between Brown's counsel and the magistrate.

fore attorney's fees are imposed, *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), it may not necessarily require both an oral hearing on whether attorney's fees should be imposed and a separate oral hearing on the amount of such fees. *See Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1522 (11th Cir.1986) (per curiam) (due process satisfied where parties have opportunity to argue propriety of sanctions and submit affidavits on amount); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (due process satisfied where party waived opportunity to challenge reasonableness of amount); *Hayden Stone, Inc. v. Brode*, 508 F.2d 895, 897 (7th Cir.1974) (per curiam) (due process satisfied where decision on propriety of sanctions made on documents submitted and hearing available on amount); *Hartman v. Caplan*, 115 F.R. D. 599, 602 (N.D.Ill.1987) (same); *Persson v. Faestel Investments, Inc.*, 88 F.R.D. 668, 669–70 (N.D.Ill.1980) (same); *cf. McFarland v. Gregory*, 425 F.2d 443, 449–50 (2d Cir.1970) (due process requires hearing on scope and cost of attorney's fees where amount of fees imposed based on "relatively unitemized affidavit"; unclear whether hearing given on propriety of fees).

The precise process through which attorney's fees were imposed on Ocelot is unfortunately unclear. The parties have not briefed the relevant facts in any detail and transcripts of the sanction hearings were not included in the record on appeal. We do know that the Browns filed their motion for sanctions on May 17, 1984. On June 1, they filed a supplement to their memorandum that stated the amount of attorney's fees sought. A further supplementary letter dated June 13, a copy of which was mailed to Ocelot's counsel, did the same. The total amount of attorney's fees claimed was $41,581.83. Argument was heard June 1 and June 14. Ocelot submitted letters to the magistrate on June 8 and June 20. Although a brief submitted by Ocelot to the district court states that the magis-

trate indicated at the June 1 hearing his inclination to strike Ocelot's pleadings and impose sanctions, Rec., vol. III, Doc. # 220, Plaintiffs' Objections to November 23 Order and Appeal Brief at 13, filed Jan. 10, 1985, at no time did Ocelot contest the amount of the proposed award.[5] Under these circumstances, the magistrate found that Ocelot waived the right to a separate hearing on the amount of the award. The magistrate also found that the greater part of the fees claimed did not flow from sanctionable conduct by Ocelot, listed the date, hours, substance, and amount of each item that did flow from such conduct, and awarded the Browns $6,467.55 in attorney's fees in its Memorandum and Order of November 23, 1984.

Ocelot thus had two opportunities to argue the amount of fees to be awarded as well as the opportunity to file a memorandum in opposition. The magistrate gave careful and critical consideration to the fees and expenses listed, disallowed the greater part of them, and set out those he allowed in detail. These facts are nearly identical to those of *Pesaplastic*. The Eleventh Circuit's reasoning is instructive.

"We read the Court's language [in *Roadway Express*] to require the district court to hold a hearing before the sanction of attorney's fees may be imposed. This requirement is clearly satisfied, however, by the kind of hearing that was held in this case, namely, a hearing on the motion for sanctions, at which both sides are entitled to present arguments as to the propriety and type of sanctions to be awarded. Contrary to the appellant's suggestion, therefore, a separate hearing to determine the amount and scope of fees to be awarded is not required. Rather, due process is afforded where, as here, the parties have an opportunity to present their arguments as to the propriety of sanctions, [and] submit affidavits on the amount of such fees and costs, with an opportunity for the

---

**5.** Ocelot first challenged the amount of attorney's fees in its objections submitted to the district court.

sanctioned party to file a motion challenging such affidavits."

*Pesaplastic,* 799 F.2d at 1522.   Ocelot has received greater process than the appellant in *Pesaplastic.*   The amount of attorney's fees to be awarded was in issue at the time of the arguments on the Browns' motion for sanction, and Ocelot therefore had the opportunity not only to file a motion in opposition, but also to contest the specific amount orally.   Its failure to do so is a waiver of its right to be heard on the issue of the amount of attorney's fees.

### III.

The judgment dismissing the action against the Browns with prejudice is reversed, and the action is remanded to the district court for further proceedings.   The award of attorney's fees to the Browns is affirmed.

AFFIRMED IN PART, REVERSED IN PART, REMANDED FOR FURTHER PROCEEDINGS.