FILED
United States Court of Appeals
Tenth Circuit

July 7, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

ALVIN LESLIE DAVIS, JR.,

      Petitioner-Appellant,

v.

DAVID C. MILLER, Warden of the
Lawton Correctional Facility,

      Respondent-Appellee.

No. 07-7062

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 06-CV-525-FHS-KEW)**

Submitted on the Briefs:

Steven M. Presson of Presson Law Office, Norman, Oklahoma, for Petitioner-Appellant.

W.A. Drew Edmondson, Attorney General, and Keeley L. Harris, Assistant Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **TACHA**, **HOLLOWAY**, and **SEYMOUR**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

Alvin Leslie Davis, Jr., appeals the district court's sua sponte dismissal of his 28 U.S.C. § 2254 petition for habeas corpus relief. We granted a certificate of appealability to decide whether the court abused its discretion in dismissing his petition under Federal Rules Civil Procedure 41(b) for failure to comply with the court's orders. We reverse and remand.

I.

Mr. Davis was tried and sentenced in the district court of McIntosh County, Oklahoma. His first trial ended in a hung jury; at the second trial, he was found guilty of first degree murder and sentenced to life without the possibility of parole. Mr. Davis's direct appeal to the Oklahoma Court of Criminal Appeals was denied, and his conviction became final on December 5, 2005. On December 4, 2006, Mr. Davis filed a timely § 2254 petition in federal district court through counsel, raising nine constitutional claims. This fifty-five page document was styled as a "preliminary petition," indicating that counsel filed it to meet the one-year statute of limitations under § 2254(d)(1)(A) and that he planned to amend the petition. A copy of this petition was served on respondent.

Upon receiving Mr. Davis's "preliminary" petition, the district court ordered him to file an amended petition by December 26, 2006. The court subsequently granted his motion for an enlargement of time and extended the deadline to February 22, 2007. Mr. Davis failed to file an amended petition by

-2-

that date, and on March 1 the magistrate judge entered an order directing him to show cause by March 21 for this failure. Again, Mr. Davis did not respond to the court's orders. The district court entered a second show cause order on May 31, setting a new deadline of June 11 and warning that dismissal could result if Mr. Davis failed to comply with the show cause order.

On June 11, 2007, counsel for Mr. Davis responded to the second show cause order, explaining that he had failed to file an amended petition because he had experienced numerous computer problems and had undergone a family crisis.[1] He requested a further extension of the filing deadline, or, alternately, that the court "instead consider each of the claims contained in the preliminary petition on the merits." Aplt. App. at 20. The court granted the extension and ordered Mr. Davis to file an amended petition by July 10. Counsel for Mr. Davis again missed the deadline. On July 16, the district court dismissed Mr. Davis's petition sua sponte under Rule 41(b) due to his failure to comply with court orders. Respondent never made an appearance in the case.

## II.

A district court may dismiss an action sua sponte "[i]f the plaintiff fails to

---

[1] Counsel's mother became very ill during the relevant period and he asserted that he was consumed by caring for her. Counsel provided numerous other explanations for the missed deadlines, most of which related to his being away from the office while attending to his mother.

prosecute or to comply with these [procedural] rules or a court order." Fed. R.

Civ. P. 41(b); *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003).

Dismissals pursuant to Rule 41(b) may be made with or without prejudice.

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1161-62 (10th Cir.

2007). The district court did not specify whether it intended to dismiss Mr.

Davis's case with or without prejudice, so we "rely on background principles

under Rule 41(b)," which instruct us to treat the dismissal as carrying prejudice

unless the dismissal order states otherwise. *Id*. at 1162; *see also* Fed. R. Civ. P.

41(b). Consequently, we treat the district court's order as a dismissal with

prejudice,[2] and we review it for abuse of discretion. *Nasious,* 492 F.3d at 1161.

We have long held that dismissal of an action with prejudice is a drastic

sanction that should be employed only as a last resort. In *Meade v. Grubbs*, 841

F.2d 1512, 1520 n.6 (10th Cir. 1988), we said, "Dismissal of an action with

prejudice is a severe sanction, applicable only in extreme circumstances. Because

dismissal with prejudice defeats altogether a litigant's right to access to the

courts, it should be used as a weapon of last, rather than first, resort." (internal

quotations and citations omitted). With that general rule in mind, we

subsequently set forth five factors the district court should consider before

---

[2] For all practical purposes, a dismissal without prejudice in these circumstances would likely be tantamount to a dismissal with prejudice because the one-year statute of limitations bars Mr. Davis from refiling his petition. *See Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993).

imposing the ultimate sanction of dismissal:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal citations and quotation marks omitted).  It is "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits [that] dismissal [is] an appropriate sanction." *Id.*  Importantly, we have noted, "The intent is to impose the sanction where the fault lies . . . .  If the fault lies with the attorneys, that is where the impact of sanction should be lodged.  If the fault lies with the clients, that is where the impact of the sanction should be lodged." *In re Baker*, 744 F.2d 1438, 1440, 1442 (10th Cir. 1984) (en banc).  Significantly, we made clear in *Ocelot Oil Corporation v. Sparrow Industries*, 847 F.2d 1458 (10th Cir. 1988), that the purpose of the first three factors is to help the court determine whether the lawyer or the client is at fault and, accordingly, where "the impact of the sanction [should] be lodged." *Id.* at 1465.

The district court concluded here that the *Ehrenhaus* factors weighed in favor of dismissal.  First, the court found "significant" prejudice to the respondent because "[p]etitioner has failed to file an amended petition for habeas relief listing all claims," and because "[t]he court found his original petition was lacking." Aplt. App. at 5-6.  Without the final version of the petition, the court

concluded, it was difficult for the respondent to know what the claims were against him.

It is not clear to us why the district court found the preliminary petition "lacking." Aplt. App. at 6. Apart from counsel's disclaimers and notice of intent to file an amended petition,[3] the petition appears complete. It begins by noting

---

[3] Petitioner included a lengthy fact section, but opened with a disclaimer:

Because of the very short time frame undersigned counsel has had to work with this case, and because of its two trials and extremely lengthy record, counsel does not yet possess a comfortable working knowledge of the facts of the case and trials. In order to meet the filing deadline, however, counsel has on information and belief formed an opinion that the claims pursued in state court were validly based on the available records and can be supported and better briefed in the near future after a better working knowledge of the record is obtained.

Aplt. App. at 23. Similarly, petitioner began the "Propositions of Error" section by stating:

The following propositions of error are taken from the state direct appeal brief filed on Davis's behalf and which claims are properly exhausted for federal review. Counsel anticipates that the claims will be supplemented with better briefing after the lengthy two-trial record in this case has been thoroughly reviewed and legal research has been completed. In situations such as this, where a preliminary filing is made on an emergency basis to preserve claims for federal review in light of the Section 2244(d) deadline, it is normally the case than an amended petition abandons some claims and concentrates on those that present the most viable claims for federal habeas relief.

*Id.* at 30.

-6-

that it was filed to satisfy 28 U.S.C. § 2244(d)'s deadline, and that "[l]eave to file an amended petition, abandoning some claims and more fully briefing claims not abandoned, will be sought shortly as pertinent rules allow." *Id.* at 21. It further explains that it contains all the information required under the relevant rules. *Id.* at 21-22. Thus, the district court's characterization of the petition as lacking is somewhat overstated: petitioner did not indicate that he planned to *add* any claims, and leave to file an amended petition was sought at Mr. Davis's own request, rather than in response to an asserted deficiency in the petition.

Furthermore, although respondent was served with the original petition, he never entered an appearance in this case. Because the district court entered an order requiring Mr. Davis to file an amended petition the day after respondent was served with the original petition, there is no chance respondent was prejudiced by exerting effort to reply to the initial petition. This case does not present the usual problems of delay where responsive pleadings, motions for discovery, status conferences, or trial preparations were underway when the action was dismissed under Rule 41(b). *Cf. Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007) (defendant prejudiced by plaintiff's failure to prosecute her case where defendant had already conducted trial preparations); *In re Baker*, 1438 F.2d at 1440 (plaintiff and third party defendant's delay in deposing witness forced court to postpone trial where date was set and jury planned).

With respect to the next factor, the district court found that there had been "extreme" interference with the judicial process because the court was forestalled from taking any action on the case until Mr. Davis filed his amended petition. Aplt. App. at 6. The court was clearly correct, and we reject Mr. Davis's argument to the contrary. Although certainly other types of delays may cause an even greater interference with the judicial process than that which occurred here, the untimeliness and failure to respond to court orders cannot be ignored. This factor impacts the court's ability to manage its docket and move forward with the cases before it, and it cannot do this if a party fails to respond to court orders.

In assessing the culpability of the litigant, the district court observed that "it is difficult to determine what role the actual petitioner has played in the delays." *Id.* To the contrary, however, the record does not support the conclusion that Mr. Davis had *any* role in the delays. In both the response to the show cause order and in the briefing before this court, Mr. Davis's counsel very clearly stated that the fault was solely his own and that his client played no role in the delays. While we do not excuse a party's failure to comply with court orders simply because responsibility lies with his counsel, *see Gripe v. City of Enid*, 312 F.3d 1184, 1189 (10th Cir. 2002) ("Those who act through agents are customarily bound by their agents' mistakes."), we have repeatedly emphasized the importance of directing sanctions at counsel when the fault lies with him rather

than with his client.  *See In re Baker*, 744 F.2d at 1442.[4]  In applying this standard, "[w]e have upheld dismissals and defaults where the parties themselves neglected their cases or refused to obey court orders, or where counsel engaged in deliberately dilatory tactics or other trial strategy intended to inure to the benefit of the client."  *Ocelot Oil Corp.*, 847 F.2d at 1464 (internal citations omitted).  On the other hand, "[w]e have reversed dismissals and defaults . . . where inadvertence or simple neglect were the basis of the court's decision."  *Id.* at 1464-65.

There is no indication that Mr. Davis's case falls into the former category – Mr. Davis was not responsible for his counsel's missed deadlines, and certainly counsel's actions were not strategically planned to benefit Mr. Davis, who is incarcerated for life without parole.  *Cf. Ehrenhaus*, 965 F.2d at 921 (party intentionally failed to appear for deposition).  We recognize that counsel's actions probably constitute more than inadvertence or simple neglect.  While we are not

---

[4]  *See also Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1439 (10th Cir. 1990) ("Dismissal with prejudice is a drastic sanction. While such a sanction may be employed in the proper situation, we have held that the district court should consider sanctioning the responsible party." (internal citations omitted)); *Seismic Intern. Research Corp. v. South Ranch Oil Co.*, 793 F.2d 227, 230 (10th Cir. 1986) ("[A] court should, when possible, enter sanctions against counsel, and not the parties they represent."); *D.G. Shelter Products Co. v. Forest Products Co.*, 769 F.2d 644, 645 (10th Cir. 1985) ("While the severe sanction of dismissal is an available remedy for failure of counsel, we have indicated that the court should explicitly weigh whether sanctions against the offending attorney will not serve the court's legitimate purposes in imposing sanctions.").

wholly unsympathetic to the events that contributed to counsel's repeated failures to comply with deadlines in this case,[5] we note that many deadlines were missed due to garden-variety causes such as computer failures and internet connectivity problems. Moreover, all of these problems could have been explained to the district court in advance of the deadlines. On balance, however, because Mr. Davis himself was not at fault and because the record does not support a conclusion that counsel's actions rose to the level of "willful misconduct," *see id.*, 965 F.2d at 920, this factor does not support dismissal.

The district court's second show cause order warned that "[f]ailure to properly show cause as to why petitioner failed to comply with this court's [first show cause] order could result in dismissal of this lawsuit." Aplt. App. at 2. Mr. Davis timely responded to this order on June 11. In his filing, he requested an extension, but then subsequently failed to file the amended petition by the new deadline. It was after this failure that the district court dismissed the case. Thus, Mr. Davis and counsel were warned about the possibility of dismissal, albeit not in connection with counsel's most recent failure to meet a deadline.

We have held that "constructive notice – that is, notice . . . objectively

---

[5] On the other hand, we *are* wholly unsympathetic to counsel's suggestion that his failure to comply with the court's orders was, in part, due to "the fact this was a pro bono case." Aplt. Br. at 6. As should scarcely need repeating, counsel's duty of diligent and prompt representation applies to all clients, without distinction.

based upon the totality of the circumstances (most importantly, the trial court's actions or words)" is adequate to support dismissal. *Rogers*, 503 F.3d at 1152 (concluding litigant received constructive notice where district court had earlier entered show cause order warning that failure to file status report may result in dismissal); *see also Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1150 (10th Cir. 2007) (concluding litigant had constructive notice where defendants had earlier filed Rule 41(b) motion to dismiss and district court had warned parties about possibility of sanctions). Under this standard, it is not necessary that the district court *promise* to dismiss the case in the event of further delay, nor is it necessary that the notice be given pursuant to the specific behavior that later forms the basis of the dismissal. *Ecclesiastes 9:10-11-12, Inc.*, 497 F.3d at 1150. Because the district court's warning put Mr. Davis and his counsel at least on constructive notice, this factor weighs in favor of dismissal.

Finally, we consider the efficacy of lesser sanctions. The district court concluded that "lesser sanctions would not correct the behavior of Petitioner." Aplt. App. at 6. But here the court was presented with an obvious lesser sanction – withdrawing permission to file an amended petition and evaluating the original petition on the merits – which would have allowed the case to proceed immediately with no opportunity for further filing failures by Mr. Davis's counsel. *Cf. Rogers*, 502 F.3d at 1152 ("[N]o appropriate lesser sanction occurs to us, and [the plaintiff] has never suggested any."); *see also Ecclesiastes 9:10-*

-11-

*11-12, Inc.*, 497 F.3d at 1150 (noting plaintiff was unable to identify a sanction short of dismissal). Given the availability of this alternate sanction and the fact that it was counsel who was at fault, the district court should have considered proceeding with Mr. Davis's original petition before dismissing the case entirely. *See Nasious*, 492 F.3d at 1163 (suggesting that a district court should generally consider "the practicability of alternatives to dismissing . . . with prejudice"); *Ehrenhaus*, 965 F.2d at 916 ("It is within a court's discretion to dismiss a case if, after considering all the relevant factors, it concludes that dismissal alone would satisfy the interests of justice.").

In addition, Mr. Davis's status as an incarcerated prisoner distinguishes this case from those involving typical civil litigants with resources at their disposal. While clients are bound by the actions of their attorneys in civil and criminal cases alike, under the totality of the circumstances approach this circuit applies, *see In re Baker*, 744 F.2d at 1440, the district court should consider the unique constraints on an incarcerated prisoner as well as the liberty interest at stake when weighing whether to pursue alternative sanctions. A malpractice suit against his attorney cannot bring Mr. Davis his freedom.

In sum, the only factors weighing in favor of dismissal are interference with the judicial process and notice to Mr. Davis that dismissal was possible. We recognize that district courts have broad discretion to dismiss cases in circumstances where there is extreme dilatory conduct, but we emphasize that

"dismissal is usually appropriate *only* where a lesser sanction would not serve the interest of justice." *Meade*, 841 F.2d at 1520 (internal quotation marks omitted) (emphasis added). We are convinced that this case falls within the category of those cases where "the deterrent effect of a default or dismissal is likely to be substantially achieved through lesser sanctions," and that dismissal with prejudice was not warranted. *Ocelot Oil Corp.*, 847 F.2d at 1465. As we explained in *In re Baker*, where we affirmed monetary sanctions against counsel for delaying trial by failing to depose a necessary witness, while the district court could have remedied the inconvenience to the court by denying the continuance, that approach "would turn the purpose of sanctions on their head." 744 F.2d at 1441. Because "[i]t [was] clear from the record . . . that the interference with sound management of the court was the fault of the lawyers on whom the sanction was imposed–not their clients, . . . . the trial court lodged the impact of the sanction precisely where it should have" – that is, on the lawyers. *Id.* at 1442. We concluded, "There are a broad range of sanctions available to the trial court, but they should be administered and tailored in a manner designed to effectuate the purpose of the sanction and in order of their seriousness as sound discretion dictates." *Id.* While the district court here was rightly concerned about the conduct of counsel, it could have imposed sanctions on him and if it did not consider that sufficient under the circumstances, it could have denied permission to file an amended petition.

For the foregoing reasons, we **REVERSE** the district court's dismissal of Mr. Davis's § 2254 petition. We **REMAND** for further proceedings and for the court to decide (1) whether to sanction counsel and (2) whether to grant Mr. Davis additional time to file an amended petition or to accept his original petition for review on the merits.

07-7062, *Davis v. Miller*

**TACHA**, J., concurring.

I concur in the result. I agree that we must reverse the district court's order of dismissal. I write separately to emphasize that litigants are generally bound by the mistakes of their attorneys and that district courts maintain wide discretion to dismiss cases accordingly. I also cannot agree with the majority's view that the respondent suffered no prejudice and that the district court did not consider the propriety of proceeding with Mr. Davis's original petition. Nevertheless, this is a most unusual case in which counsel for Mr. Davis essentially admitted professional misconduct to the district court. Thus, while this case would normally be dismissible, I would hold that because the court was on notice that counsel failed his duty of competent and diligent representation to a pro bono client, the court should not have aimed the sanction toward the client but should have fashioned an alternative remedy.