FILED
**United States Court of Appeals
Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 23, 2021**

**Christopher M. Wolpert
Clerk of Court**

_____

EASTERN COLORADO SEEDS, LLC,
a Colorado limited liability company,

    Plaintiff - Appellant,

v.

AGRIGENETICS, INC., d/b/a Mycogen
Seeds,

    Defendant - Appellee.

No. 21-1057
(D.C. No. 1:19-CV-01885-LTB-KMT)
(D. Colo.)

_____

### ORDER AND JUDGMENT*

_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

Eastern Colorado Seeds, LLC, (ECS) appeals the district court's dismissal of its action against Agrigenetics, Inc., d/b/a Mycogen Seeds, (Mycogen) as a sanction for ECS's discovery violations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

ECS, whose sole member is Clay Smith, filed this breach-of-contract action in Colorado state court, alleging that Mycogen wrongfully withheld more than $1.4 million in incentive payments and credits earned from reselling Mycogen's agricultural seeds.  A discovery dispute arose from Mycogen's efforts to discern how ECS was calculating its claimed losses.  After Mycogen removed the suit to federal court, the initial-disclosure deadline was set at November 20, 2019.  Under Fed. R. Civ. P. 26(a)(1)(A)(iii), ECS should have provided Mycogen with supporting documentation for its computation of damages by that deadline.  ECS, however, failed to provide the documentation; and on January 30, 2020, Mycogen emailed counsel for ECS its first set of interrogatories and requests for production and admissions.  ECS's responses were due in early March, but it failed to meet that deadline as well.

We need not chronicle the ensuing communications between ECS's attorney, Andrew J. Helm, and defense counsel, nor will we detail the proceedings before the magistrate judge.  Suffice it to say that even after defense counsel agreed to extend the early March deadline, she was forced to repeatedly request discovery from Helm, who repeatedly told her he would promptly provide disclosures.  Notwithstanding Helm's assurances, no disclosures were made, and Mycogen filed a motion to compel on April 15.

On May 28, ECS still having failed to comply with the discovery requests, the magistrate judge granted Mycogen's motion to compel, noting both "the stark clarity

of the discovery violations and the absence of any justification."  Aplt. App., vol 2 at

25.  The magistrate judge also sanctioned ECS by awarding Mycogen its expenses

and fees and deeming admitted its requests for admissions.  And the magistrate judge

cautioned ECS that violations of an order to produce discovery could result in

dismissal.

Despite the magistrate judge's warning and sanction, ECS proceeded to deny

in part the requests for admissions and, rather than producing all the requested

records, produced only a few spreadsheets, asserted it had previously produced

relevant business records, and said that it would "produce responsive documents as

appropriate or applicable," *id.* at 69.

Mycogen moved to dismiss the case under Fed. R. Civ. P. 37(b) and 41(b) as a

sanction for failure to comply with the magistrate judge's order and for lack of

prosecution.  The magistrate judge recommended granting the motion, ruling that

Mycogen was prejudiced by not knowing the basis for ECS's claims; the justice

system was impeded by having to repeatedly resolve the same issue; ECS ignored the

order to compel by responding to the requests for admissions, claiming it produced

documents that it never produced, and providing only limited information that was

not fully reliable or responsive; ECS was warned of the potential for dismissal; and

lesser sanctions were ineffective.  On de novo review, the district court adopted the

magistrate judge's recommendation and dismissed the suit.

II

"We review for an abuse of discretion the district court's decision to impose the sanction of dismissal for failure to follow court orders and rules." *Gripe v. City of Enid*, 312 F.3d 1184, 1188 (10th Cir. 2002). Before sanctioning a plaintiff with dismissal, a district court should consider: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (ellipsis, citations, and internal quotation marks omitted). "[F]ailure [to comply with court rules and orders] is a sufficient ground [for dismissal] only when it is the result of 'wilfullness [sic], bad faith, or . . . fault of petitioner' rather than inability to comply." *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)). There is no abuse of discretion "if, after considering all the relevant factors, [the district court] concludes that dismissal alone would satisfy the interests of justice." *Ehrenhaus*, 965 F.2d at 918.

There was no abuse of discretion here. Four of the *Ehrenhaus* factors clearly weigh in favor of dismissal. The first factor, the degree of prejudice to Mycogen, weighs in favor of dismissal because Mycogen was significantly prejudiced by the discovery delays. Indeed, during the seven months between the original response deadline on March 2, 2020, and October 1, 2020, when the magistrate judge

4

recommended dismissal, Mycogen was unable to obtain basic information to discern the basis for ECS's claims, information that ECS should have produced in November 2019 with its initial disclosures. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) ("[D]efendants were entitled to investigate the merits of the . . . specific allegations in plaintiffs' complaint.").

The second factor, interference with the judicial process, also weighs in favor of dismissal because ECS's dilatory conduct prevented the suit from progressing and diverted attention away from the merits to the collateral issue of compelling production. *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) (noting that when litigants fail to comply with discovery requests and orders, "[f]ocus shifts from the merits to the collateral and needless," which "is not speedy, inexpensive, or just"). The magistrate and district judges were unnecessarily burdened with a motion to compel, a motion to dismiss, an application for attorney's fees and costs, a motion to stay dispositive-motion deadlines, and a motion to continue the trial, with all the associated briefing and adjustments to court schedules. ECS's conduct exemplifies how a party's discovery failures can interfere with court business, impacting other matters and creating inefficiencies in use of the court's time. *See Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007).

The fourth factor weighs in favor of dismissal because it is uncontested and confirmed by the record that ECS was warned that dismissal was a potential sanction.

And the fifth factor, the efficacy of lesser sanctions, weighs in favor of dismissal because the magistrate judge imposed lesser sanctions to no avail. Despite

the magistrate judge's awarding Mycogen its fees and expenses and deeming admitted its requests for admission, ECS attempted to deny in part the requests for admission.  ECS also violated the order to compel by providing what the magistrate judge ruled was incomplete, unresponsive, and unreliable discovery while falsely representing that it had already provided additional material.  This conduct in the face of lesser sanctions demonstrates that those sanctions were ineffective.  *See LaFleur v. Teen Help*, 342 F.3d 1145, 1152 (10th Cir. 2003) (recalcitrance in the face of lesser sanctions demonstrated the inefficacy of lesser sanctions).

There remains only the third factor, the litigant's culpability.  ECS's chief argument is simply that counsel, rather than the client, were the ones at fault.  To be sure, the question of whether the client is personally at fault is a relevant factor that should be considered by the district court before dismissal.  *See Davis v. Miller*, 571 F.3d 1058, 1061 (10th Cir. 2009) (In the context of a prisoner's failure to comply with an order to file an amended habeas petition, we said, "The intent is to impose the sanction where the fault lies.  If the fault lies with the attorneys, that is where the impact of [the] sanction should be lodged.  If the fault lies with the clients, that is where the impact of the sanction should be lodged." (ellipsis and internal quotation marks omitted)).  But we should not forget the fundamental proposition that the client (the principal) is responsible for the conduct of counsel (the agent) and that the client has a remedy in malpractice against counsel.  Indeed, the Supreme Court recognized long ago that courts possess the "inherent power" to dismiss a case for counsel's dilatory conduct, which may be imputed to the client:

6

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31, 633-34 (1962) (internal quotation marks omitted).  "[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.  But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant."  *Id.* at 634 n.10; *see Gripe*, 312 F.3d at 1189 ("Those who act through agents are customarily bound by their agents' mistakes.  It is no different when the agent is an attorney. . . .  [T]he mistreated client is not totally without a remedy," though, because "[t]here may be a meritorious malpractice claim against the attorney.").

We have occasionally remanded to the district court for reconsideration because it had not considered the client's responsibility.  *See M.E.N. Co.*, 834 F.2d at 873-74; *Woodmore v. Git-N-Go*, 790 F.2d 1497, 1499 (10th Cir. 1986); *D G Shelter Prods. Co. v. Forest Prods. Co.*, 769 F.2d 644, 645 (10th Cir. 1985); *In re Russell*, 746 F.2d 1419, 1420 (10th Cir. 1984).  But here the district court expressly considered the client's culpability in analyzing the third factor.  And in any event, we have rarely held that a case was the exceptional one in which dismissal, even if otherwise fully justified, was not appropriate because of the client's lack of personal involvement.  *See Davis*, 571 F.3d at 1062 (concluding "the record [did] not support the conclusion that [petitioner] had *any*

role in the delays" because "counsel very clearly stated that the fault was solely his own and that his client played no role in the delays"); *see also id.* at 1065 (Tacha, J., concurring) (emphasizing that "litigants are generally bound by the mistakes of their attorneys" but "this is a most unusual case in which counsel . . . essentially admitted professional misconduct" in his pro bono representation of a prisoner serving a life sentence).

This is not such an exceptional case. During the course of the litigation, counsel repeatedly noted the involvement of the client in causing the delays. Indeed, Helm's statements to defense counsel as to when she might expect discovery illustrate the client's considerable involvement here:

- "Can I have a week extension on responding to discovery? Am trying to get everything finalized the first couple of days of this week, but some padding on that would help tremendously. As for depositions, *I am verifying with my client*, but I think the week of March 23-27 would work for us." Aplt. App., vol. 1 at 188-89 (emphasis added).

- "*I have a few last questions into Clay Smith with ECS on discovery responses.*" *Id.* at 192 (emphasis added).

- "*I have responses in with my client for review and approval, but have not heard back yet.*" *Id.* at 203 (emphasis added).

- "*I am checking with my client on status today*, and will be back in touch (today) with what I find out." *Id.*, vol. 3 at 133 (emphasis added).

- "*I am still waiting on some answers* anyway, so a call . . . probably won't be productive. I will be in touch as soon as I can." *Id.* at 136 (emphasis added).

Helm similarly implicated his client during calls with defense counsel, who memorialized Helm's representations in her follow-up emails to him, stating:

- "I understand that Clay Smith's wife . . . has cancer, and that as a result you were having difficulty obtaining information responsive to Mycogen's discovery requests . . . . .  I also understand that you are still trying to obtain responsive information from ECS . . . ."  *Id.*, vol. 1 at 208.

- "In our call last Wednesday, April 1, you stated you were planning on speaking with Clay Smith that day, you would provide us an update after your call with Clay, and you expected to provide Responses to Mycogen's discovery requests on April 2."  *Id.*, vol. 3 at 130.

Along the same lines, Helm represented to the magistrate judge that he had been "diligently working with Plaintiff to secure acceptable responsive materials and responses to Defendant's requests."  *Id.*, vol. 2 at 1 (ECS's Resp. to Mot. to Compel).

In light of these statements during the litigation and ECS's failure to provide a full account of what caused the delays, we cannot rely on counsel's assertion that none of the responsibility can be laid at the feet of the client.  And because the district court carefully considered ECS's culpability and expressly concluded that dismissal was a "just and appropriate sanction," *id.*, vol. 3 at 179, we conclude that the district court did not abuse its discretion in dismissing this case.[1]

---

[1] It appears that the district court may have discounted the culpability factor to some extent because ECS had not raised the point before the magistrate judge.  *See* Aplt. App., vol. 3 at 177 ("I am not inclined to allow counsel to wait to raise [the culpability] argument until after [the magistrate judge] recommends dismissal.").  But it would have been perfectly appropriate for the district court to refuse to consider at all this untimely argument.  And, in any case, the district court thoroughly discussed the matter and decided that it did not outweigh the other factors supporting dismissal.

III

The district court's judgment is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge